IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS  **JUDGE MORAN**
COUNTY DEPARTMENT, CHANCERY DIVISION **MAGISTRATE JUDGE NOLAN**

| | |
|---|---|
| CRESCENT CARE, LLC d/b/a CARILLON RESOURCES, | ) ) ) |
| Plaintiff, | ) ) **07CH35958** |
| v. | ) No. |
| TOTAL HOME HEALTH, INC., | ) ) |
| Defendant. | ) |

### COMPLAINT

Plaintiff Crescent Care, LLC d/b/a Carillon Resources, by its undersigned attorneys, alleges and complains of Defendant Total Home Health, Inc. as follows:

### GENERAL ALLEGATIONS

**The Parties**

1. Plaintiff Crescent Care, LLC is an Indiana limited liability company doing business as Carillon Resources ("Carillon").

2. Carillon is in the business of providing business and management consulting to businesses such as Defendant Total Home Health, Inc. who are in the medical services and medical supplies business. Carillon offer its clients internal management consulting as well as business development and customer relations consulting.

3. Defendant Total Home Health, Inc. ("Total Home") is an Illinois corporation.

4. Total Home is in the business of providing home medical equipment to end consumers. A large portion of Total Home's business is providing home oxygen and respiratory supplies to end consumers.

Party: Def.
Ex:

**Venue**

5. Venue is proper in Cook County pursuant to Sections 2-101 and 2-102 of the Illinois Code of Civil Procedure because Total Home is doing business in Cook County. 735 ILCS 5/2-101 and 5/2-102.

**The Agreement**

6. For at least a year prior to the events alleged herein, Carillon and Total Home had an ongoing business relationship.

7. Carillon and Total Home first began their ongoing business relationship as early as the Fall of 2005. At that time, Total Home had engaged Carillon's services to provide personnel training to Total Home's employees.

8. In or about September 2006, Carillon learned that the Federal Department of Veterans' Affairs (the "VA") was about to begin accepting bids for a substantial contract for the purchase of medical supplies by the VA. The bulk of the medical supplies the VA intended to purchase was oxygen and respiratory equipment.

9. Based on Carillon's prior relationship with Total Home and Carillon's familiarity with Total Home's business, Carillon approached Total Home with a proposal whereby Carillon would provide Total Home with the information regarding the VA contract and Carillon would use its knowledge and expertise to assist Total Home in preparing a bid to be submitted to the VA.

10. As set forth more fully in the attached Confidentiality Agreement, on or about September 22, 2006, Carillon and Total Home entered into an agreement whereby Carillon agreed to provide certain information relating to the VA contract to Total Home (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

11. In exchange for Carillon's services in connection with the Agreement, Total Home agreed to pay Carillon a 5 percent finder's fee based on the actual receipts by Total Home from the VA. (Exhibit A)

12. A finder's fee of 5 percent of the gross receipts is the standard fee in the industry for the services Carillon provided to Total Home in connection with the VA contract.

13. After Total Home agreed to the terms of the Agreement, Carillon used its substantial expertise in the medical equipment/service industry to provide Total Home with valuable consulting services and direct assistance in preparing and submitting the bid for the VA contract.

14. As a direct result of Carillon's information and consulting services, on or about May 9, 2006, Total Home was awarded a contract by the VA to supply medical equipment.

15. Total Home's contract with the VA is valued at more than $4 million per year in gross revenues to Total Home over a four year period.

16. The contract between Total Home and the VA was to begin on June 1, 2007. Pursuant to the VA contract, Total Home was to submit its invoices to the VA by the 10th of each month for supplies delivered during the prior month. Pursuant to the VA contract, the VA was obligated to pay Total Home's invoice within 30 days. Accordingly, Total Home received its first payment from the VA no later than August 9, 2007.

## COUNT I
### (Declaratory Judgement)

17. Carillon realleges Paragraphs 1 through 16 as Paragraph 17 as if fully set forth herein.

Dec 10 07 05:29p   Total Home Health, Inc.   1-847-741-0158   p.3

18. On or about June 8, 2007, after Total Home had secured the VA contract, Total Home unilaterally repudiated the Agreement claiming that the Agreement was unenforceable.

19. Contrary to Total Home's claim, the Agreement is enforceable making Total Home's repudiation unwarranted and a breach of the ongoing Agreement between Carillon and Total Home.

20. Based on its claim that Agreement is unenforceable, Total Home has failed to pay Carillon any portion of the amounts Total Home agreed to and is obligated to pay pursuant to the Agreement.

21. Carillon has fully complied with its obligations under the Agreement and has performed all conditions on its part to be performed.

22. The Agreement requires performance by Total Home in the future. Accordingly, an actual controversy exists between the parties not only as to whether Total Home is currently in breach but also as to the parties' future rights under the Agreement.

WHEREFORE, Plaintiff Crescent Care, LLC d/b/a Carillon Resources requests that this Court enter judgement in its favor and against Defendant Total Home Health, Inc. declaring the September 22, 2006 agreement enforceable and in full force and effect, awarding Plaintiff prejudgment interest, its costs of suit, attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT II
### (Breach of Contract)

23. Carillon realleges Paragraphs 1 through 16 as Paragraph 23 as if fully set forth herein.

24. The actual receipts from Total Home from the VA are unknown. However, based on the anticipated receipts by Total Home from the VA, Total Home should have received in excess of $1,500,000 from the VA to date.

25. Accordingly, Total Home should have paid but has failed to pay Carillon in excess of $75,000 to date as a finder's fee pursuant to the Agreement.

26. Total Home has breached the Agreement by repudiating the Agreement and by failing to pay the 5 percent finder's fee.

27. Carillon has fully complied with its obligations under the Agreement and has performed all conditions on its part to be performed.

WHEREFORE, Plaintiff Crescent Care, LLC d/b/a Carillon Resources requests that this Court enter judgement in its favor and against Defendant Total Home Health, Inc. in an amount to be determined at trial but in excess of $75,000 plus prejudgment interest, costs of suit, attorneys' fees, and such other and further relief as this Court deems just and proper.

### COUNT III
### (Quantum Meruit)

28. Carillon realleges Paragraphs 1 through 5 as Paragraph 28 as if fully set forth herein.

29. If no contract is found to exist between Carillon and Total Home as alleged in Count I, then, in the alternative pursuant to 735 ILCS 5/2-613, Carillon is entitled to the reasonable value its services to Total Home as follows.

30. For at least a year prior to the events alleged herein, Carillon and Total Home have had an ongoing business relationship.

-5-

31. Carillon and Total Home first began their ongoing business relationship as early as the Fall of 2005. At that time, Total Home had engaged Carillon's services to provide personnel training to Total Home's employees.

32. In or about September 2006, Carillon learned that the Federal Department of Veterans' Affairs (the "VA") was about to begin accepting bids for a substantial contract for the purchase of medical supplies by the VA. The bulk of the medical supplies the VA intended to purchase was oxygen and respiratory equipment.

33. Based on Carillon's prior relationship with Total Home and Carillon's familiarity with Total Home's business, Carillon approached Total Home with a proposal whereby Carillon would provide Total Home with the information regarding the VA contract and Carillon would use its knowledge and expertise to assist Total Home in preparing a bid to be submitted to the VA.

34. Thereafter, Carillon used its substantial expertise in the medical industry in providing Total Home with valuable consulting services and direct assistance in preparing and submitting the bid for the VA contract.

35. As a direct result of Carillon's information and consulting services, on or about May 9, 2006, Total Home was awarded a contract by the VA to supply medical equipment.

36. Total Home's contract with the VA is valued at more than $4 million per year in gross revenues to Total Home over a four year period.

37. A finder's fee of 5 percent of the gross receipts is standard in the industry for the services Carillon provided to Total Home in connection with the VA contract.

38. The contract between Total Home and the VA was to begin on June 1, 2007. Pursuant to the VA contract, Total Home was to submit its invoices to the VA by the 10th of each

- 6 -

month for supplies delivered during the prior month. Pursuant to the VA contract, the VA was obligated to pay Total Home's invoice within 30 days. Accordingly, Total Home received its first payment from the VA no later than August 9, 2007.

39. The actual receipts from Total Home from the VA are unknown. However, based on the anticipated receipts by Total Home from the VA, Total Home should have received in excess of $1,500,000 from the VA to date.

40. Accordingly, the value of the services Carillon provided to Total Home exceed $75,000 to date.

41. Total Home has been was unjustly enriched by Carillon's efforts and have unfairly retained such benefits to Carillon's detriment.

WHEREFORE, Plaintiff Crescent Care, LLC d/b/a Carillon Resources requests that this Court enter judgement in its favor and against Defendant Total Home Health, Inc. in an amount to be determined at trial but in excess of $75,000 plus prejudgment interest, costs of suit, attorneys' fees, and such other and further relief as this Court deems just and proper.

CRESCENT CARE, LLC d/b/a CARILLON RESOURCES,

By: _____
One of Its Attorneys

David H. Latham
Law Offices of David H. Latham
Suite 1400
150 North Wacker Drive
Chicago, Illinois 60606
(312) 782-1910
Atty No.: 34878



Confidentiality Agreement/ Carillon resources and Total Home Health, Inc.

## CONFIDENTIALITY AGREEMENT

AGREEMENT, made as of this 22nd day of September, 2006, by and between Total Home Health, Inc., hereinafter referred to as "Total") and Carillon Resources, (hereinafter referred to as "Carillon");

W I T N E S S E T H:

WHEREAS, Carillon proposes to disclose to Total certain confidential and proprietary financial and business information relating to a contracted business (hereinafter referred to as the "Business/contract"); and

WHEREAS, Carillon desires Total to keep such information confidential pursuant to the terms and conditions contained herein; and

WHEREAS, Total desires to receive such confidential and proprietary information and agrees to keep such information confidential pursuant to the terms and conditions contained herein;

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements set forth in this Agreement, the parties hereto agree as follows:

1. As used in this Agreement, the term "Confidential Information" shall mean written information containing confidential and proprietary financial or business information relating to the Business/contract which is provided by Carillon to Total pursuant to this Agreement.

2. Total agrees that it will use the Confidential Information solely for the purposes of determining whether Total would be interested in pursuing a possible bid of the Business/contract by Total.

3. Total agrees that the Confidential Information will be:

(a) disclosed only to those persons within Total who have a need to know the information consistent with the

1

Confidentiality Agreement/ Carillon resources and Total Home Health, Inc.

purposes for the disclosure of the Confidential Information to Total;

(b) safeguarded from disclosure to third parties in the same manner as Total safeguards its own confidential information; and

(c) returned at the request of Carillon, along with all copies or duplicates in the possession of Total.

4. Total's obligations of confidentiality under this Agreement shall continue for a period of two (2) years from the date of this Agreement.

5. Carillon represents and warrants that it has the full right to disclose the Confidential Information to Total.

6. Total agrees than if Business/contract is bid and accepted by Total or Total's representative, that Carillon will receive a 5% finder's fee for bringing the Business/contract to Total. Said fee shall be paid monthly and shall be continue upon renewal or successive renewals of said contract.

7. The terms and conditions of this Agreement constitute the entire agreement between the parties with respect to the subject matter hereof and supersede any prior understandings, agreements or representations by or between the parties, written or oral. There are no understandings, representations or warranties of any kind whatsoever, except as expressly set forth herein. No amendment or modification of this Agreement or waiver of the terms or conditions hereof shall be binding upon any party unless approved in writing by such party or by an authorized representative of such party.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the day and year first above written.

2

Confidentiality Agreement/ Carillon resources and Total Home Health, Inc.

**Carillon Resources**

By: *Kathryn Starnes-Kiely*
Kathryn Starnes-Kiely

Title: President

Date: 10-02-06

**Total Home Health, Inc.**

By: *[signature]*

Title: VP

Date: 10·02·06

3