IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRESCENT CARE, LLC d/b/a CARILLON RESOURCES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08 C 127 |
| TOTAL HOME HEALTH, INC., | ) ) | Judge James B. Moran |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION TO REMAND**

Plaintiff Crescent Care, LLC d/b/a Carillon Resources ("Carillon"), by its undersigned attorneys, for its motion pursuant to 28 USC § 1447, hereby moves this Court to remand this cause to state court. In support of its motion, Carillon states as follows:

**INTRODUCTION[1]**

1.  This is garden variety breach of contract claim originally filed in state court.

2.  Plaintiff Carillon seeks payment of the fee Defendant agreed to pay Carillon in connection with Defendant obtaining a contract with the Department of Veterans Affairs.

3.  On January 4, 2008, Defendant Total Home Health, Inc. ("Total Home") filed a Notice of Removal.

4.  Total Home claims two grounds for removal.

5.  First, Total Home claims that Carillon's complaint is founded on a claim arising under federal law. (Notice of Removal, ¶ 9) Not true. Total Home has, at best, a defense based

---

[1] Carillon has all the respect in the world for the federal courts and would be honored to litigate this case before this Court. However, because this cause does not belong in federal court and because subject matter jurisdiction is not waiveable, Carillon is rasing the issue up front rather than after lengthy proceedings in the wrong court.

on federal law.  A defense based on federal law is not grounds for removal.  *Bennett v. Southwest Airlines Co.*, 493 F.3d 762, 763 (7th Cir. 2007) ("[A]rising-under jurisdiction depends on the claim for relief rather than potential defenses.")

6. Second, Defendant claims to have been a person "acting under" federal officers within the meaning of Section 1442(a)(1) (28 USC § 1442) when it contracted with Carillon.  (Notice of Removal, ¶ 8)  As we demonstrate below, Total Home was not acting under the direction of any federal officer when it contracted with Carillon, when it received the benefits of Carillon's efforts, or when it repudiated the contract.

7. What Total Home was acting under is a very old fashioned form of greed.  Having obtained the benefits of the agreement with Carillon, Total Home simply doesn't want to pay.

8. Because this case fits into none of the vehicles for removal, it should be remanded to state court.

## FACTS

9. On or about September 22, 2006, Carillon and Defendant Total Home entered into an agreement whereby Carillon agreed to provide certain information to Total Home (the "Agreement").  (Exhibit A, Agreement)[2]

10. In exchange, Total Home agreed to pay Carillon a 5 percent finder's fee based on the actual receipts by Total Home from use of the information.  (Exhibit A, Agreement)

11. The information provided to Total Home was the fact that the Federal Department of Veterans Affairs (the "VA") was about to begin accepting bids for a substantial contract for the purchase of medical supplies.  (Exhibit B, Complaint, ¶¶ 9-10)

---

[2.]   A copy of the agreement is attached to the Complaint as Exhibit A.  The complaint is attached to the Notice of Removal as Exhibit C.

12. After Total Home accepted the terms of the Agreement, Carillon provided the agreed on information and also used its substantial expertise in the medical equipment/service industry to provide Total Home with valuable consulting services and direct assistance in preparing and submitting a bid to the VA. (Exhibit B, Complaint, ¶ 13)

13. On or about May 9, 2006, Total Home was awarded a contract by the VA to supply medical equipment. Total Home obtained the VA contract as a direct result of Carillon's information and consulting services. (Exhibit B, Complaint, ¶ 14)

14. Total Home's contract with the VA is valued at more than $4 million per year in gross revenues to Total Home over a four year period. (Exhibit B, Complaint, ¶ 15)

15. On or about June 8, 2007, after Total Home had secured the VA contract, Total Home unilaterally repudiated the Agreement claiming that the Agreement was unenforceable under Illinois law because the contract lacked consideration. (Exhibit B, Complaint, ¶ 18; Exhibit C, Kathryn Starnes-Kiely Affidavit, Tab 1)

16. Notably, Total Home's June 8 letter did not claim that the Agreement was unenforceable under federal law. (Exhibit C, Kathryn Starnes-Kiely Affidavit, Tab 1)

17. Total Home's letter, asserting state law grounds for terminating the contract, was delivered to Carillon under cover of a letter from Total Home's current counsel. (Exhibit C, Kathryn Starnes-Kiely Affidavit, Tab 2)

18. By letter dated June 13, 2007, Carillon pointed out the many errors in Total Home's excuse for repudiating the Agreement.

19. Total Home then regrouped, went back to the library, and, on June 14, 2007, claimed the contract was illegal under federal law. (Exhibit D, David H. Latham, Tab 1)

20. This lawsuit ensued.

## ARGUMENT

**Burden of Establishing Jurisdiction**

21.     The party asserting federal jurisdiction has the burden of proof. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005) ("Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction.")

22.     Total Home cannot establish subject matter jurisdiction in this case. Accordingly, this Court should remand this case to state court.

**Total Home's *Illegality* Defense Is Not a Grounds for Removal**

23.     As noted, Total Home's first basis for jurisdiction is that Carillon's claim arises under federal law. Specifically, Total Home asserts that Carillon's claim arises under federal law because 28 USC § 254 makes it illegal for Carillon and Total Home to enter into a contingent fee contract. (Notice of Removal, ¶ 10)

24.     Total Home's defense is without merit but that is for another day. For now, it is enough that Total Home's defense is just that, a defense. "Illegality" is specifically listed in Rule 8(c) of the Federal Rules of Civil Procedure as a defense. A defense under federal law is not grounds for removal. *Bennett v. Southwest Airlines Co.*, 493 F.3d 762, 763 (7th Cir. 2007) ("[A]rising-under jurisdiction depends on the claim for relief rather than potential defenses.")

25.     Accordingly, Total Home cannot remove this case based on "arising-under" jurisdiction.

**Total Home Was Not Acting under a Federal
Officer When it Repudiated the Contract**

26.     Total Home's second basis for removal is that it was a person "acting under" a federal officer pursuant to 28 USC § 1442.

27.     "The party seeking removal under § 1442 must demonstrate that (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning there is a nexus or causal connections between plaintiff's claims and its actions; and (3) it can assert a colorable federal defense to state-law liability." *Harris v. Rapid American Corp.*, 2007 WL 4553082 * 1 (N.D. Ill. 2007) (copy attached).

28.     Total Home cannot establish the second element, i.e. a causal connection between Carillon's claim and the Total Home's action under supervision of the VA.  Nor has Total Home presented a factual basis for its illegality defense – the third element.

29.     All of the evidence offered by Total Home details how the day-to-day performance of its contract with the VA is done under the supervision and direction of VA personnel.

30.     Total Home's day-to-day activities are irrelevant to Carillon's contract with Total Home.  In other words, the VA's supervision of Total Home had nothing to do with Total Home entering into the contract with Carillon, nothing to do with Carillon's performance under the contract, nothing to do with Total Home's taking advantage of Carillon's services, and nothing to do with Total Home's repudiation of the agreement.

31.     Total Home signed the contract with Carillon in September 2006 without Total Home even knowing that the VA was soliciting bids.

32. Carillon and Total Home worked together to prepare Total Home's bid without supervision from the VA.

33. It is apparent that Total Home decided to repudiate its obligations without interference from the VA. After all, Total Home's first correspondence with Carillon was based solely on purported state law defenses, i.e lack of consideration. (Exhibit C, Kathryn Starnes-Kiely Affidavit, Tab 1) And, not that it would matter, but Total Home's motion does not even claim that the VA instructed it to repudiate the contract.

34. In sum, the VA's supervision of Total Home had nothing to do with its contract with Carillon.

35. Accordingly, the required nexus between Total Home's repudiation of its obligations to Carillon and the VA's supervision of Total Home's performance under the contract with the VA is wholly missing. This missing link is fatal to Total Home's motion. *Good v. Armstrong World Industries, Inc.*, 914 F. Supp 1125, 1128 (E.D. Pa. 1996); *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947-48 (E.D.N.Y. 1992).

**Total Home Has Not Supported its Federal Defense**

36. In addition, Total Home assumes without support that the contract between Carillon and Total Home is governed by the statutes and regulations it cites.

37. In support of its conclusion, Total Home cites two statutes and a regulation in support of its argument. These provisions, in relevant part, provide:

> Each contract awarded under this chapter after using procedures other than sealed-bid procedures shall contain a warranty, determined to be suitable by the head of the agency, that the contractor has employed or retained no person or selling agency to solicit or obtain the contract under an understanding or agreement for a commission, percentage, brokerage, or contingent fee, except a bona fide employee or established commercial or selling agency maintained by him to obtain business. If a contractor breaks such a warranty the United States

> may annul the contract without liability or may deduct the commission, percentage, brokerage, or contingent fee from the contract price or consideration.

10 USC § 1306(b).

> (a) Contracts awarded using procedures other than sealed-bid procedures
>
> Except as provided in subsection (b) of this section, contracts awarded after using procedures other than sealed-bid procedures may be of any type which in the opinion of the agency head will promote the best interests of the Government. Every contract awarded after using procedures other than sealed-bid procedures shall contain a suitable warranty, as determined by the agency head, by the contractor that no person or selling agency has been employed or retained to solicit or secure such contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business, for the breach or violation of which warranty the Government shall have the right to annul such contract without liability or in its discretion to deduct from the contract price or consideration the full amount of such commission, percentage, brokerage, or contingent fee.

41 USC § 254(a).

> This subpart prescribes policies and procedures that restrict contingent fee arrangements for soliciting or obtaining Government contracts to those permitted by 10 U.S.C. § 2306(b) and 41 U.S.C. § 254(a).
>
> Contractors' arrangements to pay contingent fees for soliciting or obtaining Government contracts have long been considered contrary to public policy because such arrangements may lead to attempted or actual exercise of improper influence.  In 10 U.S.C. 2306(b) and 41 U.S.C. 254(a), Congress affirmed this public policy but permitted certain exceptions.  These statutes—
>
>> (a)  Require in every negotiated contract a warranty by the contractor against contingent fees;
>>
>> (b)  Permit, as an exception to the warranty, contingent fee arrangements between contractors and bona fide employees or bona fide agencies; and
>>
>> (c)  Provide that, for breach or violation of the warranty by the contractor, the Government may annul the contract without liability or deduct from the contract price or consideration, or otherwise recover, the full amount of the contingent fee.

41 CFR §§ 3.400 and 3.402.

38.     Total Home's Notice of Removal assumes these provisions apply but does not provide the facts for this Court to make that determination.

39.     For instance, was the contract between Total Home and the VA a negotiated contract or was the contract a sealed bid contract?  Both of the statutes cited above specifically exclude from their provisions sealed bid contracts.  10 USC § 2306(b) and 41 USC § 254(a).

40.     In addition, Total Home fails to provide this Court with a copy of its warranty against contingent contracts as required by 10 USC § 2306(b) and 41 USC § 254(a).  Such a warranty would have been required if, as Total Home suggests, the contract between Total Home and Carillon were prohibited.

41.     If Total Home gave such a warranty and, as Total Home suggests, the contract between Total Home and Carillon were prohibited, then it has defrauded the federal government.  If Total Home was not required to give a warranty, then the Total Home/Carillon contract is either not prohibited or falls within one of the allowed exceptions.  In either case, Total Home's defense fails as does its attempt to remove this case from state court.

42.     Finally, the statutes cited prevent a contingent fee agreement only if the "person or selling agency has been employed or retained to solicit or secure such contract."  10 USC § 1306(b) and 41 USC § 254(a).  The contract between Carillon and Total Home was for information.  Carillon was not and Total Home does not suggest Carillon was employed to solicit or secure the VA contract.

43.     Accordingly, the statutes Total Home cites are irrelevant and do not support removal of this case.

**CONCLUSION**

44.     For the foregoing reasons, Total Home has failed to establish that this Court has subject matter jurisdiction over this cause.  Accordingly, this Court should remand this cause to state court.

WHEREFORE, Plaintiff Crescent Care, LLC d/b/a Carillon Resources, requests that this Court enter an Order remanding this case to state court and awarding Plaintiff its attorneys' fee incurred in bringing this motion pursuant to 28 USC § 1447.

                    CRESCENT CARE, LLC d/b/a CARILLON RESOURCES,

                      /s/  David H. Latham
By: _____
                    One of Its Attorneys

David H. Latham
Law Offices of David H. Latham
Suite 1400
150 North Wacker Drive
Chicago, Illinois  60606
(312) 782-1910
Atty No.: 34878

**CERTIFICATE OF SERVICE**

David H. Latham certifies that a copy of Plaintiff's Motion to Remand was served upon:

Thomas H. James
James & Associates
412 2nd Ave
P.O. Box 398
Forreston, Illinois  61030

by electronic means through the Court's Electronic Case Management system on this 24th day of January 2008.

/s/  David H. Latham
_____
David H. Latham