UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRESCENT CARE, LLC d/b/a CARILLON )
RESOURCES,                        )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        No.08 CV 127
                                  )
TOTAL HOME HEALTH, INC.,          )
                                  )
            Defendant.            )

**BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 12(b)(6)**

NOW COMES, Defendant Total Home Health, Inc., by and through its attorneys, and for this pleading states as follows:

The Plaintiff's Burden Of Sufficiency Requires The Allegations Not Merely Be Conceivable
But Instead Plausible Pursuant to the Twombly Decision

1. Federal Rule of Civil Procedure (hereinafter FRCP) 12(b)(6) provides for dismissal upon

   the failure to state a claim upon which relief can be granted.  The application of this

   Rule, and its impact on what must be alleged as a matter of sufficiency under FRCP

   8(a)(2) was recently reviewed in Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct.

   1955; 167 L. Ed. 2d 929 (2007).  Twombly, at S.Ct. 1969, altered the path of pleading a

   sufficient claim by retiring an oft quoted statement from Conley v. Gibson, 355 U.S. 41,

   78 S.Ct. 99, 2 L.Ed.2d 90 (1957).  The quote from Conley at Twombly, S.Ct. 1968,

   being: 'the accepted rule that a complaint should not be dismissed for failure to state a

   claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

   support of his claim which would entitle him to relief'). In regard to this quote, which

   has been a standard of pleading for 50 years, the Twombly Court provided, Id. at 1967,

as follows as a preface to its retirement:

> "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." See also *Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (CA7 1984)*

2.  Thus, Twombly reemphasizes the trial court's gate-keeping function. In this regard, its

analysis was provided at S.Ct. 1969, L.Ed.2d 944-945:

> We could go on, but there is no need to pile up further citations to show that *Conley's* "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.

3.  The above Twombly quote begs the question then of: "what is the Plaintiff's pleading

burden in order to adequately state a claim?". This is answered at the end of the

Majorities opinion, Id. at 1974, as follows:

> ... [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.

4.  The meaning of Twombly was referred to in Rodriguez-Ortiz v. Margo Caribe, Inc., 490

F.3d 92, 95 (1st Cir. 2007) as follows:

> At the outset, we note that even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1967, 167 L.Ed. 2d 929 (2007). In so doing, the Court disavowed the oft-quoted language of *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

2

to relief." *See Twombly*, 127 S. Ct. at 1969. The Court found that the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim," and that "after puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.* at 1968, 1969.

5. The Seventh Circuit has also reviewed Twombly in In Re: Ocwen Loan Servicing, LLC Mortgage Servicing Litigation, 491 F.3d 638 (7th Cir. 2007) wherein it upheld the denial of a motion to dismiss which was appealed on interlocutory grounds under 28 U.S.C. § 1292(b). Although the Ocwen court affirmed the trial court's decision it provided specific instruction in light of Twombly as follows, 491 F.3d at 648-649:

> The complaint was filed in April 2004 after the transfer of the various suits against Ocwen to the Northern District of Illinois. Rather than trying to rule on preemption on the basis of an uninformative complaint, the district judge should have required the plaintiffs to specify the acts of Ocwen that they contend violate state law. Three years have been wasted. On remand, the judge must focus on the acts alleged in the complaint, seeking clarification from the plaintiffs where necessary and deciding in accordance with this opinion which are preempted and which are not. He must avoid the further protraction of this unwieldy litigation.

> He will also want to consider whether any portions of the complaint should be dismissed for failure either to comply with *Rule 9(b)* or to comply with the recent pleading standard announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1967-69, 167 L. Ed. 2d 929 (2007)*. The Court held that a complaint that charges an agreement between firms not to compete, in violation of antitrust law, must contain "enough factual matter (taken as true) to suggest that an agreement was made. . . . An allegation of parallel conduct and a bare assertion of conspiracy will not suffice." The Court rejected the heretofore canonical formula of *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*, "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court was concerned that *Conley* 's formula might be invoked to condemn the defendant in an antitrust case to conducting expensive pretrial discovery, in order to demonstrate the groundlessness of the plaintiff's case. The present case is not an antitrust case, but the district court will want to determine whether the complaint contains "enough factual matter (taken as true)" to provide the minimum notice of the plaintiffs' claim that the Court believes a defendant entitled to.

This quote applies in the present case as well in that the Plaintiff must demonstrate how its pleading allows for relief under the general prohibition against contingencies in government contracting, 48 C.F.R. 3.400 through 3.404, attached as Ex. A.

6.  As such, both Ocwen, supra, and Rodriguez-Ortiz, supra, denote the minimal pleading requirement, for cases other than anti-trust, that the Supreme Court held upon in Twombly. Rodriguez-Ortiz quoted Twombly on this requirement: "a complaint must allege 'a plausible entitlement to relief.' Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1967, 167 L.Ed. 2d 929 (2007)", Id., supra. Combining the holdings of Ocwen, supra, and Rodriguez-Ortiz, supra, reflects the following rule: "a complaint must allege"[1] ["enough factual matter taken as true"[2]] to demonstrate "a plausible entitlement to relief."[3]. To refer back to Twombly as quoted in par. 3 above, it is the sufficiency of factual pleading which "nudges" a complaint from the insufficiency of mere conceivability to the permissible minimum of "plausibility". In the case at bar, this sufficiency arises in light of the requirements of 48 C.F.R. subpart 3.4.

### The Setting Of This Case

7.  Presently, this case arises in the federal district court predicated upon the federal officer provisions of 28 U.S.C. § 1442(a)(1), 1446, or, the federal question jurisdiction provisions of 28 U.S.C. §§ 1331, 1441(b), 1446 (as further described in the Defendant's "Brief in Support of the Notice of Removal" which the Defendant incorporates herein as if fully set forth). The Defendant is moving that the preemptive effect of the federal policy, statutes and regulations in prohibition of contingent agreements in relation to

---

1 Rodriquez-Ortiz, supra, at F.3d 95.
2 Ocwen, supra, at F.3d 649.

obtaining federal governmental contracts portends the dismissal of the case in its present

form of pleading, , Hazelton v. Sheckells, 202 U.S. 71, 26 S. Ct. 567, 50 L. Ed. 939

(1906); LeJohn Manufacturing Company v. Webb, 222 F.2d 48 (U.S. Ct. App. DC Cir.

1955); Bradley v. American Radiator & Standard Sanitary Corp., 159 F.2d 39 (2d Cir.

1947); 48 C.F.R. 3.400 through 404; 48 C.F.R. 101through 104.  The Plaintiff alleges a

three count complaint of relief filed in Cook County Illinois wherein relief of a

contractual finder's fee is sought in relation to the Defendant's being awarded a contract

with the Department of Veteran Affairs (hereinafter the "VA")(see Complaint pars. 10

through 16 and the document titled "Confidentiality Agreement" attached as Exhibit A

to the Complaint).  Count I purports to allege Declaratory Relief as to enforceability.

Count II purports to allege a breach of contract. Count III purports to allege Quantum

Meruit (apparently as an alternative allegation in the event a Court finds the contract

unenforceable).  Count I and II each incorporate the first sixteen paragraphs of the

allegations as the first paragraph of each count.  Count III incorporates only pars. 1

through 5 and then purports other allegations in what the Plaintiff conceives as an

equitable count for Quantum Meruit.

A Finders Fee Agreement, Like The Plaintiffs, In Relation To A Particular Government
Contract Is Barred From Enforceability As A Matter of Federal Law That Preempts State Law.
As Such, The Conceivability Of A State Based Claim Is Not Plausible To Provide Notice Of A
Sufficient Claim under Twombley, Ocwen and Rodriquez-Ortiz

8.  Preemption.  That federal law and policy on the preemption of federal procurement law

as compared to state law  was opined in: Miller v. Arkansas, 352 U.S. 187, 190, 77 S.Ct.

257 (1956)(Government Procurement law preempts State law.); Gartrell Contruction v.

---

3 Rodriguez-Ortiz, supra, at F.3d 95.

Aubry, 940 F.2d 437, 438 (9th Cir. 1990)(Federal procurement law preempts State law.

"Thirty-five years ago, the United States Supreme Court ruled on the issue before us

today: whether a contractor performing services on a federal construction project can be

required by the state to obtain a license from the state's contractor's licensing board. The

Court held that a state licensing requirement is invalid as applied against a contractor

with the federal government because it results in interference with federal government

functions and is in conflict with federal procurement legislation; its application is

therefore precluded by the Supremacy Clause of the United States Constitution. Leslie

Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956)."); United

States of America v. Commonwealth of Virginia, 139 F.3d 984, 987 (4th Cir.

1998)(Federal Acquisition Regulation preempts State law.), Mitchell v. Flinkote Corp.,

185 F.2d 1008, 1011 (2nd Cir. 1951) cert. denied 341 U.S. 931 (1951)("Order No. 9001

[a precursor to the Federal Acquisition Regulation at Title 48 of the United State Code,

hereinafter referred to as FAR] states a federal rule of public policy and federal, not

state, law governs its applicability. The "checker-board" pattern imposed by Erie R. Co.

v. Tompkins is necessarily unsuited to matters subject to federal regulation, and hence

state law does not control the disposition of suits which, although they are between non-

governmental parties and are brought in a federal court on the basis of diversity of

citizenship, involve interpretation or application of federal law."). Thus, in reviewing

the Complaint for sufficiency, it is measured against federal procurement law which

includes the ban against contingencies as referred to in 48 C.F.R. subpart 3.4. Put

differently, as the FAR preempts State law, any alleged recovery sought by the Plaintiff

must comply with the FAR in order to be "plausible" under Twombley, supra. The authority of the VA to promulgate regulations pursuant to 38 U.S.C. 501 in replacement of an area of State law was reviewed in an analogous area of VA regulation in United States v. Shimer, 367 U.S. 374; 81 S. Ct. 1554; 6 L. Ed. 2d 908(1961). In Shimer the Court was reviewing whether the VA regulations replaced Pennsylvannia deficiency judgment law and held:

> At U.S. 377: ... The Regulations promulgated by the Veterans' Administration make clear that they were intended to create a uniform system ....
> At U.S. 381: ... We have no doubt that this regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection ... and was, to this extent, meant to displace inconsistent state law. ...
> At U.S. 382-383: ... We think that the Servicemen's Readjustment Act authorized the Veterans' Administrator to displace state law by establishing these exclusive procedures.

9.  The Federal Policy and Regulation Against Contingencies, Commissions, Broker's Fees etc. Historically, the federal policy prohibition against contingencies, commission broker's fees etc. was announced by the United States Supreme Court in reference to a series of cases opined in Hazelton v. Sheckells, 202 U.S. 71, 26 S. Ct. 567, 50 L. Ed. 939 (1906)(The original contract was with Miller who died during the proceedings wherein Sheckells replaced Miller). In Hazelton, the plaintiff was seeking an equitable decree of specific performance from the defendant to sell to the plaintiff a parcel of land for $9,000 so that the Plaintiff could convey the land to the United States government for $14,395.50. The bill in equity was described as follows at U.S. 77:

> This is a bill for the specific performance of a contract dated December 11, 1902, to sell for nine thousand dollars, at any time during the then present session of Congress, "and such additional time as may be necessary for settlement under appropriation by that Congress," part of a lot in a square which Congress now has voted to acquire for the erection of a hall of records.

7

10. The condition of the agreement was as follows wherein, at <u>Id.</u> U.S. 78, the Court

describes the nature of the agreement as a "contingency":

> The contract provided that if Hazelton should "fail to take advantage of and accept this offer as above within the time mentioned, then this agreement shall be null and void." The bill alleges that a part of the consideration for the contract "was services rendered both before and after the making of said contract, by the plaintiff in bringing the property to the attention of the committees of Congress as a suitable and appropriate site for a hall of records."

11. The Court assumed the sufficiency of the acceptance of the offer and of the

consideration, <u>Id.</u> U.S. 78. The Court then predicated its response to enforcing the

agreement in equity to determining: "...whether it is one upon which a contract lawfully

may be based. But the court is of opinion that that question must be answered in the

negative. Every part of the consideration goes equally to the whole promise and

therefore, if any part of it is contrary to public policy, the whole promise falls."

12. The <u>Hazelton</u> court held as follows on the issue of the lawfulness of the contract, at U.S.

79 (last par. of the opinion):

> The general principle was laid down broadly in *Tool Co. v. Norris, 2 Wall. 45, 54,* that an agreement for compensation to procure a contract from the Government to furnish its supplies could not be enforced irrespective of the question whether improper means were contemplated or used for procuring it. *McMullen v. Hoffman, 174 U.S. 639, 648.* And it was said that there is no real difference in principle between agreements to procure favors from legislative bodies, and agreements to procure favors in the shape of contracts from the heads of departments. *2 Wall. 55.* In *Marshall v. Baltimore & Ohio R.R., 16 How. 314, 336,* it was said that all contracts for a contingent compensation for obtaining legislation were void, citing, among other cases, *Clippinger v. Hepbaugh, 5 W. & S. 315,* and *Wood v. McCann, 6 Dana (Ky.), 366.* See also *Mills v. Mills, 40 N.Y. 543.* There are other objections which would have to be answered before the bill could be sustained, but that which we have stated goes to the root of the contract and is enough to dispose of the case under the decisions heretofore made.

13. <u>Hazelton</u> reflects the general federal policy on prohibiting contingencies *of any kind* as a

basis for remuneration in assisting with or finding a governmental contract. The policy

ban against contingencies in the acquisition of governmental contracts was reiterated

again in LeJohn Manufacturing Company v. Webb, 222 F.2d 48 (U.S. Ct. App. DC Cir.

1955)(Webb was to receive a commission of five per cent on all consummated sales of

defendant company's products to the United States). The LeJohn Court stated as follows

at F.2d 50:

> 'Contingent fee contracts to secure Government business for the employer of the
> recipient (of the fee) have been held invalid because of their tendency to induce
> improper solicitation of public officers and the exercise of political pressure.'
> Muschany v. United States, 1945, 324 U.S. 49, 64, 65 S.Ct. 442, 450, 89 L.Ed.
> 744. This traditional policy of the courts was reinforced by Executive Order No.
> 9001, 6 Fed.Reg. 6787, 50 U.S.C.A.Appendix, § 611 note, issued pursuant to the
> First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq., and by Section 4(a) of
> the Armed Services Procurement Act, 41 U.S.C.A. § 153(a).

14. LeJohn provides background as to the exception to the ban for certain types of entities

pursuant to what was then an Executive Order and is now the FAR:

> At the time the arrangement in this case was made, the Executive Order required
> Government procurement contracts to contain the following warranty:
> 'The contractor warrants that he has not employed any person to solicit or secure
> this contract upon any agreement for a commission, percentage, brokerage, or
> contingent fee. Breach of this warranty shall give the Government the right to annul
> the contract, or, in its discretion, to deduct from the contract price or consideration
> the amount of such commission, percentage, brokerage,[95 U.S.App.D.C. 360] or
> contingent fees. This warranty shall not apply to commissions payable by
> contractors upon contracts or sales secured or made through bona fide established
> commercial or selling agencies maintained by the contractor for the purpose of
> securing business.'
> The purpose of this requirement of the Executive Order is plain: it reflects the
> public policy long enunciated by the courts, and adds to it a thrust comparable to
> that of statutory law. See Mitchell v. Flintkote Co., 2 Cir., 1951, 185 F.2d 1008. A
> compensation contract in violation of the required warranty will not be enforced by
> the courts.

15. LeJohn also reflects the nature of the scrutiny employed in determining whether an

9

exception to the rule may be allowed; and, it referred to an opinion from the 5th Circuit

to support its' position:

> 'The exception creates a privileged class who may receive contingent fees for
> securing government contracts, while others may not. Not only should grants of
> special privileges be jealously restricted, but such a restriction is also in the interest
> of maintaining the integrity of governmental contracting procedure.' Bradley v.
> American R. & S.S. Corp., 2 Cir., 1947, 159 F.2d 39, 40, 41, affirming,
> D.C.S.D.N.Y., 1946, 6 F.R.D. 37.

> Adopting a similar approach, the Fifth Circuit has held that the exception does not
> protect one 'who merely receives a contribution to the support of its agency in the
> form of a contingent fee.' United States v. Paddock, 5 Cir., 178 F.2d 394, 395,
> rehearing denied, 1950, 180 F.2d 121, certiorari denied, 1950, 340 U.S. 813, 71
> S.Ct. 41, 95 L.Ed. 597. The court added--
> 'The primary decision on this item turns upon the meaning of the word maintained;
> for present purposes, it is the key word in the exception. If the word is given its
> usual and ordinary acceptation, and interpreted in the spirit of the order, the
> exceptive class of procurement agencies is limited to those maintained by the
> contractor in good faith for the purpose of securing business. To maintain here
> (according to the dictionary) means to keep in a particular state or condition; to
> sustain; to keep possession of; to hold and defend; not to surrender or relinquish; to
> bear the expense of; to support; to keep up; to supply with what is needed.
> Consequently, a procurement agency, employed merely on contingent fees to secure
> war contracts, did not meet the test prescribed by the exceptive clause * * *.' 178
> F.2d at page 395.

16. Historically, the original insertion of a clause prohibiting contingent fees in government

contracts was a matter of executive policy, and continued as such until 1941. In that year

Congress passed the First War Powers Act (Act of December 18, 1941, 55 Stat. 839).

And, Executive Order 9001 (December 27, 1941) issued requiring the inclusion of a

warranty against contingent fees. By the Executive order the covenant had now reached a

quasi-statutory status.  Congress took the next step by enacting the Armed Services

Procurement Act (Act of February 19, 1948, 62 Stat. 23), Section 4(a) of which provided

that every contract entered into by a military department contain the covenant against

contingent fees (now codified at 10 U.S.C. § 2306(b)). This requirement was extended to the civilian agencies of the government by Section 304(a) of the Federal Property and Administrative Services Act (Act of June 30, 1949, 63 Stat. 395, 41 U.S.C. § 254(a)).

17. The historical policy bar now arises from regulatory adoption of the FAR for the VA. Chapter 8, at subpart 801.104, of Title 48 adopts the Federal Acquisition Regulation as the Veterans Affairs Acquisition Regulation. See 801.101 – 104 below:

> ### 801.101  Purpose
>
> (a)  This subpart establishes Chapter 8, Veterans Affairs Acquisition Regulation, of Title 48--Federal Acquisition Regulation System, Code of Federal Regulations.
>
> (b)  The VAAR must be utilized in conjunction with the FAR.  The VAAR cannot be utilized by itself.
>
> ### 801.103  Authority.
>
> The VAAR and any amendments thereto are issued by the Secretary of Veterans Affairs as provided by 38 U.S.C. 501 and the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 486(c)).
>
> ### 801.104  Applicability.
>
> (a)  The FAR and VAAR apply to all acquisitions of the Department (including construction) made with appropriated funds and procurements made with Supply Fund monies (39 U.S.C. 8121).
>
> (b)  The FAR and VAAR will apply to the special procurement programs authorized by Title 38, United States Code (viz., Veterans Canteen Service and the Loan Guaranty programs) to the extent indicated in the VAAR.

18. The present Federal Acquisition Regulation of Title 48 arises from the above legislative and executive history.  Pursuant to the present day FAR, which controls for VA contracting purposes per Ch. 8 of Title 48 C.F.R., 48 C.F.R. 3.402 provides the regulatory structure currently in place.  48 C.F.R. 3.403 reflects that the prohibition of the subpart applies to all contracts[4].  Subpart 3.402 provides as follows:

---

4 The "Simplified Acquisition Procedures", see FAR 2.000 and 2.101, under FAR subpart 13, do not apply as they are generally for contracts not exceeding $100,000.  Par. 15 of the Complaint alleges revenue in excess of $4,000,000 annually for four years.  A quick method to search the

**3.402 Statutory requirements.**

Contractors' arrangements to pay contingent fees for soliciting or obtaining Government contracts have long been considered contrary to public policy because such arrangements may lead to attempted or actual exercise of improper influence. In 10 U.S.C. 2306(b) and 41 U.S.C. 254(a), Congress affirmed this public policy but permitted certain exceptions. These statutes—

(a) Require in every negotiated contract a warranty by the contractor against contingent fees;

(b) Permit, as an exception to the warranty, contingent fee arrangements between contractors and bona fide employees or bona fide agencies; and

(c) Provide that, for breach or violation of the warranty by the contractor, the Government may annul the contract without liability or deduct from the contract price or consideration, or otherwise recover, the full amount of the contingent fee.

19. The contract attached to the State Complaint is incorporated into the plaintiff's pleadings, see FRCP 10(c.).

20. <u>Failure to State a Claim</u>. The State Complaint at bar does not state a claim under FRCP 12(b)(6) because the allegations and the contract do not comply with subpart 3.400 et.seq. of the FAR and <u>LeJohn</u> (for the proposition that the exception to the general bar is jealously restricted) and <u>Paddock</u>, <u>supra</u>, ("Consequently, a procurement agency, employed merely on contingent fees to secure war contracts, did not meet the test prescribed by the exceptive clause").

21. The regulation itself at 48 C.F.R. 3.401 defines the prohibited contingencies: "Contingent fee" means any commission, percentage, brokerage, or other fee that is contingent upon the success that a person or concern has in securing a Government contract." Par. 12 of the Complaint and par. 6 of Ex. A to the Complaint reflects a 5% finder's fee based on Total's bid being accepted. This is a standard contingency in the

FAR is at arnet.gov. The FAR is the first quicklink on the web page. FAR 13.005(a)(6) appears to exclude contracts below the threshold from the regulatory contingency bar. But, this exception

nature of what is generally barred from recovery unless the Plaintiff can demonstrate its'

pleading as excepted, as referred to subpart 3.402(b).

22. Case law demonstrates further two conditions in the construing the exception to the bar

against contingencies as defined under subpart 3.402(b). Under the first condition, case

law distinguishes between "general" and "special agency" for purposes of construing

what is a "bona fide agency" for "this contract"s, 48 C.F.R. 3.402(b), see <u>Bradley v.</u>

<u>American Radiator & Standard Sanitary Corp.,</u> 159 F.2d 39 (2d Cir. 1947) (which

disallowed a special or limited agency to be permissible for the exception to the

contingency bar). However, a general agency to obtain government contracts may be

regarded favorably, <u>Reynolds v. Goodwin-Hill Corp.,</u> 154 F.2d 553 (2d Cir. 1946). This

distinction is of import because the Carillon agreement6 does not refer to any form of

general agency but instead is conditioned upon the limited successful bidding of a single

and particular contracted business, see footnote 6 below, referring to Ex. A to the

Complaint, the first "Whereas" par. on pp. 1, and Ex. A, par. 6. Carillon's State

Complaint, at pars. 8 and 9, also reflects that it sought out the VA contract specifically to

send it to Total. Consequently, the Plaintiff has pleaded a contingent agreement in

relation to an impermissible special agency or limited agency in regard to a single

government contract. Such a pleading fails to plead relief on which relief can be granted

because the pleading violates Title 48, subpart 3.402, and fails to allege facts of a general

agency as required for the exception under 3.402(b).

---

does not overturn the federal policy bar referred to in Hazelton, <u>supra</u>.
5 The "this contract" language arises from 48 C.F.R. 52.203-5  Covenant Against Contingent
Fees where the actual contract clause is listed containing the quoted language.
6 See Ex. A to State Complaint, copy of State Complaint attached to the Notice of Removal as

**23.** The second additional condition, in fulfilling an exception to the ban on contingencies, arises from FAR 3.401 which defines "bona fide agency" as one that is "maintained by a contractor for the purpose of securing business". Paddock, supra, reflects that "maintained" does not include the use of a contingency to pay the broker or finder. The difference in the application of Reynolds, for purposes of construing a general agency, as opposed to the impermissible special agency as was referred to in Paddock and Bradley, each supra, was heard in Beach v. Illinois Lumber Mfg. Co., 92 F.Supp. 564 (N.D.Ill., E.D., 1949). Simply put, the Plaintiff Carillon has alleged nothing like the general agency upon which Beach was able to successfully attain enforcement of the exception to the contingency bar. Ex. A to the Complaint contains no language of general agency whereby Carillon would attempt to drum up business on a broad and continuing basis regarding Total's business. Moreover, given the narrow purpose of Ex. A. to the State Complaint as being specifically for "a contracted business (hereinafter referred to as the "Business/contract")" where the terms of Ex. A are limited to the four corners of the agreement per Ex. A, par. 7, it is doubtful that any pleading will ever be pleaded sufficiently. Regardless, the current pleading is not "plausible" as a cause of action under Twombly, supra, because no facts have been pleaded placing Carillon's purported "confidentiality agreement" in exception to the general, statutory and regulatory bar against contingencies in governmental contracting.

**24.** In light of the deficiencies of the Complaint, when compared to the FAR's and the case law's requirements barring contingencies in governmental contracts, it follows that neither Count I or II state a provident claim of relief under FRCP 12(b)(6). This leaves

---

Defense Ex. C.                                     14

Count III which seeks quantum meruit in the event no relief at law is found. As Count III can not make use of the exception to the bar on contingencies because the relief is not at law, Count III must nevertheless tread the more general prohibition of Hazelton v. Sheckells, supra. As Hazelton sought and lost on the enforceability of an equitable decree because of the Supreme Court's policy bar, it follows that equity provides no solace or relief against this broad prohibition and therefore no claim for relief has been pleaded for purposes of FRCP 12(b)(6).

25. Finally, the agreement itself is part of the Complaint pursuant to FRCP 81(c.), 10(c.). The agreement is clearly a two year confidentiality agreement that does not allow disclosure to the VA. Nothing in 48 C.F.R. subpart 3.4 refers allows confidential finder's fee agreements as part of the conduct of a bona fide agency maintained by the contractor. Moreover, LeJohn Manufacturing Company v. Webb, 222 F.2d 48 (U.S. Ct. App. DC Cir. 1955) clearly admonishes against broadening the relief of the exception:

> 'The exception creates a privileged class who may receive contingent fees for securing government contracts, while others may not. Not only should grants of special privileges be jealously restricted, but such a restriction is also in the interest of maintaining the integrity of governmental contracting procedure.' Bradley v. American R. & S.S. Corp., 2 Cir., 1947, 159 F.2d 39, 40, 41, affirming, D.C.S.D.N.Y., 1946, 6 F.R.D. 37

At the very least, a confidentiality agreement used to preclude the federal government from knowing of the finder's fee would appear to run contrary to the federal policy and regulations which is sought to be protected by the ban against contingencies.

Wherefore, Defendant Total Home Health, Inc. prays that this action be dismissed pursuant to Rule 12(b)(6).

By: _____

Thomas H. James of James & Associates for Total Home Health, Inc.
PO 398 – 412 2nd Ave,Forreston, IL 61030
ARDC 6200493, Admitted to the N.D. General Bar and Trial Bar:April 12, 1990

15