UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRESCENT CARE, LLC d/b/a CARILLON RESOURCES, <br><br> Plaintiff, <br><br> v. <br><br> TOTAL HOME HEALTH, INC., <br><br> Defendant. | ) ) ) ) ) ) ) No. 08 C 127 ) ) ) ) ) |

## BRIEF IN SUPPORT OF THE NOTICE OF REMOVAL

NOW COMES Defendant Total Home Health, Inc. (hereinafter "Total"), and files this brief in support of its Notice of Removal:

1. Defendant's Notice of Removal is alternatively predicated upon the federal officer provisions of 28 U.S.C. § 1442(a)(1), 1446, and the federal question jurisdiction provisions of 28 U.S.C. §§ 1331, 1441(b), 1446.

## 28 U.S.C. § 1442(a)(1)

2. The federal officer removal statute permits a defendant to remove to federal court a state-court action brought against the:

> "United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1) (emphasis added).

3. Pursuant to pars. 8 through 16 of the state court complaint, the Plaintiff pleads the existence of the contract awarded to the Defendant from the Department of Veterans Affairs (hereinafter the VA) to provide oxygen and medical supplies to VA beneficiaries (ie veterans who qualify for VA assistance).

4. The words "acting under" are broad, and it has made clear that the statute must be "liberally construed." Colorado v. Symes, 286 U.S. 510, 517, 52 S. Ct. 635, 76 L. Ed. 1253 (1932); Arizona v. Manypenny, 451 U.S. 232, 242, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981); Willingham v. Morgan, 395 U.S. 402, 406-407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969).

5. The history and nature of this "acting under" authority was recently reviewed in Watson v. Phillp Morris Companies, -- U.S. --, 127 S. Ct. 2301, 2305-2308, 168 L. Ed. 2d 42 (2007)(Phillip Morris sought, unsuccessfully, to analogize its regulatory compliance to the recognized government contractor theory that arises as "acting under" per 28 U.S.C. § 1442(a)(1). Watson cited to Winters v. Diamond Shamrock for this purpose, infra). There are three prongs of proof to Total's theory for 28 U.S.C. § 1442(a)(1) removal: (1) Total qualifies as "persons", (2) "acting under color of federal authority" when committing the acts that allegedly led to the Plaintiff's allegations, and (3) it has asserted a colorable federal defense, see Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998). Additionally, "this right is not to be frustrated by a grudgingly narrow interpretation of the removal statute. Willingham, 395 U.S. at 407; Manypenny, 451 U.S. at 242 (quoting Willingham); Sparks, 978 F.2d at 232 (noting Supreme Court requirement of liberal interpretation for over two decades).", see, Winters, at F.3d 398.

### THE FIRST PRONG: TOTAL IS A PERSON UNDER § 1442(a)(1)

6. Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998) held corporations to be "persons" for purposes of § 1442(a)(1). Thus, Total, as an Illinois Corporation, as pleaded under par. 3 of the Complaint, qualifies as a "person" for the first prong of § 1442(a)(1); see also, Madden v. Able Supply Co., 205 F.Supp.2d 695 (2002)(Explaining Winters application of corporations being "persons", "the Fifth Circuit noted that the Supreme

Court's holding in Int'l Primate had been superseded by a 1996 amendment to the statute that expressly allows federal agencies to remove actions against them to federal court").

### THE SECOND PRONG: TOTAL IS ACTING UNDER COLOR OF FEDERAL AUTHORITY PER § 1442(a)(1)

7. The "acting under color of federal authority" in regard to the VA was reviewed in both Baird v. Haith, 724 F. Supp. 367 (U.S.D.C. Maryland, 1988)(state breach of contract and other state claims) and in Malone v. Longo, 463 F. Supp. 139, 141 (E.D.N.Y. 1979)(state defamation claim). In both Baird and Longo, VA nurses were sued in state court in their individual capacities for conduct which arose at a VA hospital. In each case removal was granted as the allegations against the nurses arose in their capacity of working for the VA.

8. In the present case, Total was awarded a VA contract to service the VISN 12 area for veteran beneficiaries in need of respiratory therapy, oxygen and equipment, see the Notice of Removal and supporting attachments. The Plaintiff specifically alleges Total as a VA contractor based upon being awarded its VA contract in par. 8, 14, 15 and 16 of the Complaint. Allen Porter Kirk, Vice-President of Total, in his Affidavit (Ex. D to the Notice of Removal) evidences in detail as to: the scope the work Total does for the VA, the chain of command to which Total reports, and evidences that Total is under "orders" from the VA, Ex. D to the Notice of Removal at par. 5:

> "The contract shall be for the actual requirements of the VA as ordered by the VA during the life of the contract. The Contracting Officer's Technical Representative (COTR) or designee will provide the contractor with notification to initiate individual beneficiary service requirements, including the beneficiary's oxygen prescription, equipment, supplies, and services to be provided including date and place of delivery, the contractor will confirm receipt of the request immediately upon notification; the COTR or designee will also provide notification if VA owned equipment is provided; the COTR or designee will also provide notification of VA initiated discontinuance of service. The notification may be made orally, but will be confirmed in writing or fax on the same day. The written documents will include the authorizing official's signature."

Additionally, attached to this Brief are CRS Reports for Congress prepared by the Congressional Research Service in 2005 and 2006 detailing the statutory and regulatory responsibility of the Veterans Administration in regard to: Basic Eligibility for Disability Benefit Programs (RL 33113)(Ex. 1) and Benefits for Service Connected Disabilities (RL 33323)(Ex. 2). Between the allegations, the CRS Reports, the Notice of Removal and its supporting attachments, it is demonstrated that the VA is responsible under federal law to qualifying veterans to provide respiratory therapy, oxygen and equipment; and Total, by virtue of being a VA contractor, is under orders from the VA to supply these benefits to the veterans. The State Court Complaint, see Ex. C to the Notice of Removal, contains the finder's fee agreement at issue (titled "Confidentiality Agreement" as attached to the Complaint). Importantly, assuming a lawful agreement in arguendo, the finder's fee agreement, as reflected in par. 6 of the "Confidentiality Agreement", was executory until such time as the VA contract was bid and accepted as and between Total and the VA. Thus, the finder's fee, again in arguendo, only arises if and upon such time as Total is acting under the color of authority as a VA contractor and is of no effect until such time as Total becomes a VA contractor. Thus, the purported finder's fee agreement arises, for purposes of being plausibly effective, only if and when the ambit of Total's authority is established under the VA, and not before.

8. Madden v. Able Supply Co., 205 F.Supp.2d 695 (2002) reviewed the nature of the second prong in light of Mesa v. California, 489 U.S. 121, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989). In Madden the affidavits of company officers from Westinghouse evidenced the nature of the control, reporting and adherence to the direction of federal officers: "The submission of the uncontested Gate affidavit plainly shows that Westinghouse was acting under the direction of a

Naval officer in the design and manufacture of the marine turbines. The affidavit of Allen Port Kirk, like affidavit referred to in <u>Madden</u>, reflects the extensive level of detail and control exercised by the VA officers through Total's Vice-President and Total's employees. Alan Porter Kirk in obtaining the VA contract had to comply with an extensive level of detail in submitting his Requests for Proposals in order for Total to be awarded the VA contract. The affidavit, as well as the records in support of the affidavit, reflect the constant communication and daily reporting which arises in between the company officers, company employees and the VA officers including the use of a daily action report (ie DAR report) that summarizes: all tasks, who completed the task, when it was completed and notes on the task, with VA Beneficiaries by Total for the entire VISN-12 area (ie Illinois, Wisconsin and part of the Upper Peninsula of Michigan, part of Indiana and part of Minnesota). The Kirk affidavit also reflects that when a Freedom of Information Request about Total's VA contract is directed to the VA, the VA orders Total to respond.

9. The level of control the VA officers exercise over Total's officers in the execution of the VA contract arises directly from Title 48 of the Code of Federal Regulations which contains what is known as the Federal Acquisition Regulation (ie the FAR); see also, Chapter 8, at subpart 801.104, of Title 48 which adopts the FAR for the Veterans Affairs Acquisition Regulation. Subparts 43 through 51 regulate "Contract Management" under the FAR. Typifying the extensive regulatory detail which the VA officers maintain over the Total company officers in execution of the VA contract are subparts 42.3 and 42.15 which are attached hereto as Exs. 3 and 4, respectively.

10. In light of the Affidavits of Total's company officers, the FAR's regulatory authority and control as operated and delegated through the VA contracting officers, and said officer's contract administration office, it is clear that Total is "acting under" federal officers with the VA in execution of the VA contract that it was awarded in compliance with the second prong, referred to above and otherwise at <u>Mesa v. California</u>, 489 U.S. at 125, 109 S. Ct. at 962-63.

### THE THIRD PRONG: TOTAL HAS A COLORABLE FEDERAL DEFENSE IN SUPPORT OF § 1442(a)(1) WHICH HAS A NEXUS BETWEEN BETWEEN THE CHARGED CONDUCT AND THE ASSERTED OFFICIAL AUTHORITY

11. The final prong of removal under 28 U.S.C. § 1442(a)(1) is whether Total has raised a "colorable federal defense" to the allegations of the state complaint, <u>Mesa</u>, <u>supra</u>, at 129, 109 S. Ct. at 965. This was expounded upon in <u>Jefferson County v. Acker</u>, 527 U.S. 423, 430, 119 S. Ct. 2069, 2074, 144 L. Ed. 2d 408 (1999):

> "(3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties." <u>28 U.S.C. § 1442 (1994 ed. and Supp. III)</u>. (Def. Emph. the decision footnotes this reference and notes: "Other subsections of § 1442 establish similar removal rights for other federal officers. See 28 U.S.C. §§ 1442(a), (b)"
>
> It is the general rule that an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit. See <u>28 U.S.C. § 1441(a)</u>. To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal. See <u>Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 53 L. Ed. 126, 29 S. Ct. 42 (1908)</u>. Suits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law.
>
> To qualify for removal, an officer of the federal courts must both raise a colorable federal defense, see *Mesa v. California,* 489 U.S. 121, 139, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989), and establish that the suit is "*for* an act under color of office," <u>28 U.S.C. § 1442(a)(3)</u> (emphasis added). To satisfy the latter requirement, the officer must show a nexus, a "'causal connection' between the charged conduct and asserted official authority." <u>*Willingham* v. *Morgan,* 395 U.S. 402, 409, 23 L. Ed. 2d 396, 89 S. Ct. 1813 (1969)</u> (quoting *Maryland* v. *Soper (No. 1),* <u>270 U.S. 9, 33, 70 L. Ed. 449, 46 S. Ct. 185 (1926)</u>.

    In construing the colorable federal defense requirement, we have rejected a "narrow, grudging interpretation" of the statute, recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." 395 U.S. at 407. We therefore do not require the officer virtually to "win his case before he can have it removed." *Ibid.* Here, the judges argued, and the Eleventh Circuit held, that Jefferson County's tax falls on "the performance of federal judicial duties in Jefferson County" and "risks interfering with the operation of the federal judiciary" in violation of the intergovernmental tax immunity doctrine; that argument, although we ultimately reject it, see *infra*, at 10-18, presents a colorable federal defense. <u>Jefferson County</u>, 92 F.3d at 1572. There is no dispute on this point. See *post*, at 5 (SCALIA, J., concurring in part and dissenting in part).

12. In this case, the Plaintiff seeks to impose the recovery of a "finder's fee" of 5% pursuant to par. 11 and the attachment to the Complaint. According to Plaintiffs allegations in pars. 12 and 15, the 5% finders fee applies against a VA contract with gross revenues in excess of $4,000,000 per year. The Plaintiff seeks this recovery through three counts: Count I is in breach of contract, Count II is a declaratory action requesting that the Court find the contract enforceable and Count III seeks quantum meruit in the alternative event that the contract is found unenforceable, see C. III., par. 29. Total has filed a motion pursuant to Fed.R.Civ.Proc. 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted which is based on the "colorable federal defense" referred to below. As reflected by the majorities analysis on removal in <u>Jefferson County v. Acker</u>, <u>supra</u>, starting at U.S. 428, the burden of proving a case as removable is a separate inquiry from that asserted under Total's Rule 12(b)(6) motion. One does not have to prove the defense, in the context of the removal proceeding, as the nature of the removal proceeding is to demonstrate a "colorable" defense, <u>Id.</u> In the case at bar, the defense arises as to the payment of the 5% from the VA contract which only occurs after the Total is working under the "color of office".

13. 48 C.F.R. subpart 3.400 (copy attached as Ex. 5) prohibits arrangements to pay contingent fees, commissions or finders fees for soliciting or obtaining government contracts, see also, Hazelton v. Sheckells, 202 U.S. 71, 26 S. Ct. 567, 50 L. Ed. 939 (1906)(Equity does not allow for a recovery which violates United States public policy on the prohibition against contingencies), LeJohn Manufacturing v. Webb, 222 F.2d 48 (D.C. App. Cir. 1955)(Reversing the District Court for recognizing a 5% commission on sales to the Federal Government); Quinn v. Gulf & Western, 644 F.2d 89, 92-93 (2nd Cir. 1980)(Reversing the District Court and following the prohibition against contingencies); Kashfi v. Phibro-Saloman, 628 F.Supp. 727 (S.D. N.Y. 1986)(Relying on federal procurement law, the district court granted summary judgment against a finder's fee and quantum meruit based on a foreign law which was substantially similar to the United Stated federal contracting bar against contingent fees). In each of these cases the "arrangement" preceded the allegation of purported contingency, without avail.

14. In government contracting, the federal law completely preempts state law, Miller v. Arkansas, 352 U.S. 187, 190, 77 S.Ct. 257 (1956)(Government Procurement law preempts State law.); Gartrell Contruction v. Aubry, 940 F.2d 437, 438 (9th Cir. 1990)(FAR preempts State law. "Thirty-five years ago, the United States Supreme Court ruled on the issue before us today: whether a contractor performing services on a federal construction project can be required by the state to obtain a license from the state's contractor's licensing board. The Court held that a state licensing requirement is invalid as applied against a contractor with the federal government because it results in interference with federal government functions and is in conflict with federal procurement legislation; its application is therefore precluded by the Supremacy Clause of the United States Constitution. Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d

231 (1956)."); United States of America v. Commonwealth of Virginia, 139 F.3d 984, 987 (4th Cir. 1998)(FAR preempts State law.), Mitchell v. Flinkote Corp., 185 F.2d 1008, 1011 (2nd Cir. 1951) cert. denied 341 U.S. 931 (1951)("Order No. 9001 [a precursor to the FAR] states a federal rule of public policy and federal, not state, law governs its applicability. The "checker-board" pattern imposed by Erie R. Co. v. Tompkins is necessarily unsuited to matters subject to federal regulation, and hence state law does not control the disposition of suits which, although they are between non-governmental parties and are brought in a federal court on the basis of diversity of citizenship, involve interpretation or application of federal law.").

15. In light of the citations above in par. 13, the colorable federal defense is straight-forward, the Plaintiff seeks to recover a contingency which federal law prohibits, 48 C.F.R. subpart 3.400 et.seq. Put simply, federal law prohibits the type of arrangement the Plaintiff seeks to enforce and declare under Counts I and II, Id.; and, such a claim is similarly prohibited in equity, such as Count III, as a matter of federal precedent, Hazelton v. Sheckells, 202 U.S. 71, 26 S. Ct. 567, 50 L. Ed. 939 (1906); Kashfi v. Phibro-Saloman, 628 F.Supp. 727 (S.D. N.Y. 1986). Finally, in light of the citations in par. 14, state law yields to the federal policy and federal regulations which prohibit contingencies because state law theories, as relate to government contracting under the VA contract at issue, are preempted. As the payment under the purported 5% finder's fee does not arise until such time as Total became a VA contractor, the purported requirement to pay can not arise except during the time that Total is acting as a government contractor with the VA and therefore prohibited by 48 C.F.R. subpart 3.400 from making said payment.

16. Thus, Total has fulfilled the elements of 28 U.S.C. § 1442(a)(1) allowing for removal.

## 28 U.S.C. §§ 1331, 1441(b), 1446

17. In the case at bar, the Plaintiff has pleaded a State complaint in three counts that factually arises from the bidding process of a federal procurement contract with the VA, see pars. 8 through 16 of Counts I and II, pars. 32 through 39 of Count III. The basis of the Plaintiff's relief is purportedly triggered, if at all, based upon obtaining a finder's fee or quantum meruit, from the Defendant due to the Defendant's *successful bidding* for a particular VA contract, Id.. The Plaintiff's allegations, if any, can not come into effect, and are therefore contingent, until such time as the VA has awarded contract rights to a successful bidder, Id.  Voorhees v. Naper Aero Club, Inc. et.al., 272 F.3d 398, 402 (7th Cir. 2001) provides an analysis of federal question jurisdiction as follows:

> … the parties to this lawsuit are not diverse; hence, the original jurisdiction necessary for removal, if such jurisdiction exists, must be based on the presence of a federal question. The defendants were able to convince the district court to accept jurisdiction over the case on this basis, contending that the case arose "under the Constitution, laws, or treaties of the United States." 28 U.S.C. sec. 1331.
> A case arises under federal law within the meaning of sec. 1331 only when the claim for relief depends in some way on federal law, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." Taylor v. Anderson, 234 U.S. 74, 75-76 (1914). This is the "well-pleaded complaint" rule that every first- year law student learns was established in Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908). Under that rule, federal courts may look only to the well-pleaded complaint, and not to any possible or anticipated defenses, to determine if the case arises under federal law. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).

In reviewing case law where the factual allegations raise the federal question it was held in S. E. Overton Co. v. International Brotherhood of Teamsters, ..., 115 F. Supp. 764, 768 (W.D. Mich. 1953):

> The complaint does not expressly mention the Labor Management Relations Act of 1947, commonly known as the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., nor does it mention the Federal statutes relating to interstate commerce. However, it is

fundamental that the court may properly take judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint, although specific reference to such laws has been omitted. In <u>Dynamic Mfrs., Inc., v. Local 614 of the Gen. Drivers, Warehousemen & Helpers of America, D.C., 103 F.Supp. 651, at page 652</u>, the district court for the Eastern District of Michigan said:
'The fact that the plaintiff in his bill does not identify a Federal statute, does not prevent the court from recognizing the existence of a controversy clearly covered by a Federal statute. The court will take 'judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint; and it is immaterial that specific reference to such laws may be omitted in the pleading." See also <u>Southern Pacific Co. v. Stewart, 245 U.S. 359, 362, 38 S.Ct. 130, 62 L.Ed. 345</u>; <u>Downey v. Geary-Wright Tobacco Co., D.C., 39 F.Supp. 33</u>; <u>Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217</u>.

18. Although <u>Voorhees</u> at F.3d 403-404, only refers to three areas of complete federal occupation of a field of law, namely, labor law, ERISA and the regulation of mobile telecommunications rates and market entry; the regulation of commissions, contingencies, finder's fees etc. also completely occupies the field of law as it arises in relation to government procurement, see 48 C.F.R. 3.400 through 3.404 of the Federal Acquisition Regulations (hereinafter the FAR), adopted by the VA pursuant to 48 C.F.R. 801.101, 103, and 104 (adopting the FAR as the Veterans Administration Acquisition Regulation hereinafter the VAAR). 48 C.F.R. 801.103 provides in particular part: "The VAAR and any amendments thereto are issued by the Secretary of Veterans Affairs as provided by 38 U.S.C. 501 and the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 486(c))." The authority of the VA to promulgate regulations pursuant to 38 U.S.C. 501 in replacement of an area of State law was reviewed in an analogous area of VA regulation in <u>United States v. Shimer</u>, 367 U.S. 374; 81 S. Ct. 1554; 6 L. Ed. 2d 908(1961). In <u>Shimer</u> the Court was reviewing whether the VA regulations replaced Pennsylvannia deficiency judgment law and held:

> At U.S. 377: ... The Regulations promulgated by the Veterans' Administration make clear that they were intended to create a uniform system for determining the

>Administration's obligation as guarantor, which in its operation would displace state law. ...
>
>At U.S. 381: ... We have no doubt that this regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection of the interests of the Veterans' Administration as guarantor and was, to this extent, meant to displace inconsistent state law. ...
>
>At U.S. 382-383: ... We think that the Servicemen's Readjustment Act authorized the Veterans' Administrator to displace state law by establishing these exclusive procedures.9 9 In this regard it is important to recall the scope of our review in a case such as this. More than a half-century ago this Court declared that "where Congress has committed to the head of a department certain duties requiring the exercise of judgment and discretion, his action thereon, whether it involve questions of law or fact, will not be reviewed by the courts, unless he has exceeded his authority or this court should be of opinion that his action was clearly wrong." *Bates & Guild Co. v. Payne, 194 U.S. 106, 108-109*. This admonition has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. See, *e. g., National Broadcasting Co. v. United States, 319 U.S. 190; Labor Board v. Hearst Publications, Inc., 322 U.S. 111; Republic Aviation Corp. v. Labor Board, 324 U.S. 793; Securities & Exchange Comm'n v. Chenery Corp., 332 U.S. 194; Labor Board v. Seven-Up Bottling Co., 344 U.S. 344*.
>
>Footnote 9 Section 504 of the Act provides: "The Administrator is authorized to promulgate such rules and regulations not inconsistent with this title, as amended, as are necessary and appropriate for carrying out the provisions of this title, and may delegate to subordinate employees authority to issue certificates, or other evidence, of guaranty of loans guaranteed under the provisions of this title, and to exercise other administrative functions hereunder."

The authorizing language for the VA as reviewed in <u>Shimer</u> is of the same type and authority as arises for promulgation of the FAR and the VAAR under 38 U.S.C. §501 and 40 U.S.C. §486 (now restated at 40 U.S.C. §121), copies attached, Exs. 6 and 7.

19. Federal law and policy on the preemption of federal procurement law as compared to state law was opined in: <u>Miller v. Arkansas</u>, 352 U.S. 187, 190, 77 S.Ct. 257 (1956)(Government Procurement law preempts State law.); <u>Gartrell Contruction v. Aubry</u>, 940 F.2d 437, 438 (9th Cir. 1990)(Federal procurement law preempts State law. "Thirty-five years ago, the United States

Supreme Court ruled on the issue before us today: whether a contractor performing services on a federal construction project can be required by the state to obtain a license from the state's contractor's licensing board. The Court held that a state licensing requirement is invalid as applied against a contractor with the federal government because it results in interference with federal government functions and is in conflict with federal procurement legislation; its application is therefore precluded by the Supremacy Clause of the United States Constitution. Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956)."); United States of America v. Commonwealth of Virginia, 139 F.3d 984, 987 (4th Cir. 1998)(Federal Acquisition Regulation preempts State law.), Mitchell v. Flinkote Corp., 185 F.2d 1008, 1011 (2nd Cir. 1951) cert. denied 341 U.S. 931 (1951)("Order No. 9001 [a precursor to the Federal Acquisition Regulation at Title 48 of the United State Code, hereinafter referred to as FAR] states a federal rule of public policy and federal, not state, law governs its applicability. The "checker-board" pattern imposed by Erie R. Co. v. Tompkins is necessarily unsuited to matters subject to federal regulation, and hence state law does not control the disposition of suits which, although they are between non-governmental parties and are brought in a federal court on the basis of diversity of citizenship, involve interpretation or application of federal law."). Finally, the VA's regulation, as stated at 48 C.F.R. 3.400 et.seq., as being completely preemptive of the field of State based relief is further exemplified by the narrow method of review that is necessary to challenge such a regulations promulgation, see 38 U.S.C. §502, see Carpenter v. Secretary of Veteran Affairs, 343 F.3d 1347 (Fed. Cir. 2003)(Review of challenge to regulations issued under section 501 rests solely in the Federal Circuit pursuant to section 502. Carpenter is an example of such a challenge.); see also, Augustine v. Department of Veterans Affairs, 429 F.3d 1334,

1339-1340 (Fed.Cir. 2005):

> Whether or not California law applies, it is quite clear that state law purporting to govern practice before a federal administrative agency would be invalid. It is long established that any state or local law which attempts to impede or control the federal government or its instrumentalities is deemed presumptively invalid under the Supremacy Clause. Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 189-90, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956); Johnson v. Maryland, 254 U.S. 51, 57, 41 S.Ct. 16, 65 L.Ed. 126 (1920); McCulloch v. Maryland, 4 Wheat. 316, 17 U.S. 316, 429-430, 4 L.Ed. 579 (1819); Mount Olivet Cemetery Ass'n. v. Salt Lake City, 164 F.3d 480, 486 (10th Cir.1998); Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp., 642 F.2d 527, 534-35 (D.C.Cir.1980).
> As a consequence, the Supreme Court and the courts of appeals have frequently invalidated state licensing requirements for federal employees and federal contractors. See Leslie Miller Inc., 352 U.S. at 190, 77 S.Ct. 257 (holding that the United States Air Force alone has the authority to determine the type of license that is required of its independent contractors); Johnson, 254 U.S. at 57, 41 S.Ct. 16 (holding that a state could not require the driver of a United States Postal truck to obtain a state driver's license before performing his duties); United States v. Virginia, 139 F.3d 984, 987-88 (4th Cir.1998) (holding that the Virginia Criminal Justice Services Board could not require private investigators under contract with the FBI to obtain state private investigator licenses); Taylor v. United States, 821 F.2d 1428, 1431-32 (9th Cir.1987) (noting that California could not require an army hospital or its health care providers to be licensed under state law).

Just as State law can not govern the licensing requirements for federal employees and federal contractors, neither can it replace the Federal Acquisition Regulations prohibition against contingent fee arrangements as adopted under the FAR and the VAAR by the VA.

20. The Federal Acquisition Regulations and the contracts awarded there under are part and parcel of the federal government and its instrumentalities, <u>Leslie Miller, Inc. v. Arkansas</u>, 352 U.S. 187, 189-90, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956)(Federal government contractor is an instrumentality of the United States which can not be regulated by State licensing requirements.). The FAR, and in particular the prohibitions against contingencies in federal contracting, seek to protect the uniform application and integrity of the procurement process; see, <u>LeJohn Manufacturing Company v. Webb</u>, 222 F.2d 48 (1955):

> The purpose of this requirement of the Executive Order is plain: it reflects the public policy long enunciated by the courts, and adds to it a thrust comparable to that of statutory law. See Mitchell v. Flintkote Co., 2 Cir., 1951, 185 F.2d 1008. A compensation contract in violation of the required warranty will not be enforced by the courts.
> Plaintiff argues that he is a 'bona fide established commercial or selling (agency) maintained by the contractor for the purpose of securing business,' and is thus entitled to the benefit of the exception contained in the last sentence of the quoted warranty. Speaking of that sentence, the Second Circuit has said:
> 'The exception creates a privileged class who may receive contingent fees for securing government contracts, while others may not. Not only should grants of special privileges be jealously restricted, but such a restriction is also in the interest of maintaining the integrity of governmental contracting procedure.' Bradley v. American R. & S.S. Corp., 2 Cir., 1947, 159 F.2d 39, 40, 41, affirming, D.C.S.D.N.Y., 1946, 6 F.R.D. 37.

21. As Total's award of the VA contract, as pleaded by the Plaintiff, makes it an instrumentality of the United States under the FAR and the VAAR, see <u>Miller</u>, <u>supra</u>, where the methodology of federal procurement under the FAR was promulgated and adopted by the VA pursuant to 38 U.S.C. 501, it follows that the Plaintiff's remedy, if any, must arise from pleading federal question relief pursuant to 48 C.F.R. 3.400 through 3.404 which provides both a ban and a remedy with regard to purported contingencies. As such, this regulation completely preempts State based relief and is the controlling federal authority by which the Plaintiff must plead its relief, if any, in federal court, to the exclusion of State based theories of recovery.

Wherefore, the notice of removal is proper and the case should proceed in the federal district court, for the reasons stated herein.

By: _____
Thomas H. James of James & Associates, Signing pursuant to Rule 11
James & Associates
PO 398 – 412 2nd Ave
Forreston, IL  61030
ARDC 6200493
Admitted to the N.D. General Bar and Trial Bar:
April 12, 1990