Order Code RL33323

# CRS Report for Congress
Received through the CRS Web

# Veterans Affairs: Benefits for Service-Connected Disabilities

**March 21, 2006**

Douglas Reid Weimer
Legislative Attorney
American Law Division

Party: Total

Ex: 2

*Congressional Research Service ❖ The Library of Congress*

# Veterans Affairs: Benefits for Service-Connected Disabilities

## Summary

Congress provides various benefits to American veterans and their dependents through the United States Department of Veterans Affairs (VA). One of these benefits is *disability compensation,* which is a monthly cash benefit program for veterans currently impaired from past service-connected activities.

A claim for disability compensation in initially analyzed by the VA at the local level to determine: 1) whether the claimant is considered a "veteran" (eligible for benefits); 2) whether the veteran qualifies for disability compensation (entitled to benefits); 3) the extent of the impairment and the "rate" of the disability; and 4) the effective date for the compensation.

Three requirements to qualify for disability compensation are: 1) medical diagnosis of the current impairment; 2) evidence of an in-service occurrence or an aggravation of the disease or injury; and 3) medical proof of a connection between the in-service incident or aggravation of an injury or illness and the current disability. The requisite standard of proof and certain medical presumptions are set by statute. The VA is required to provide assistance to the veteran in his/her case preparation by providing records and medical examinations. Special rules have been established for certain specific situations involving combat veterans, prisoners of war, and veterans exposed to Agent Orange.

If the veteran is found eligible for disability compensation, the VA then uses the Schedule for Rating Disabilities (SRD) to set the amount of earnings impairment on a percentage basis; the higher the percentage, the greater the compensation will be. Certain complications arise with the use of the rating system. A veteran's rating may be increased or decreased over time — depending on his/her medical condition. Rating decisions may be appealed administratively.

Legislation passed in the 109th Congress increased monthly disability compensation payments. Other legislation enacted requires the VA to notify veterans with low disability compensation about new claim processes and requests for a review of past ratings. Other related legislation is pending.

## Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Veterans' Disability Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    The "Local Determination" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Requirements for Disability Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Medical Proof of a Connection Between the In-Service Incident or
        Aggravation or an Injury/Illness and the Current Disability . . . . . . . . . 4

The VA's Obligations in the Preparation/Presentation of the Veteran's Case
    and Certain Presumptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Standard of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Assistance in Case Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Certain Presumptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        Presumption of Medical Soundness . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        Special Rules for Certain In-Service Occurrences . . . . . . . . . . . . . . . . 6

The VA Rating System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Schedule for Rating Disabilities (SRD) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    Application of the Rating System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        Complications in the Use of the Rating System . . . . . . . . . . . . . . . . . . 8
        Changes in Veterans' Ratings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        Special Monthly Compensation (SMC) . . . . . . . . . . . . . . . . . . . . . . . . 9
        Zero Percent Evaluation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        Periodic Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        Appeals from Ratings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Evaluation of the Rating System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Current Legislation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# Veterans Affairs:  Benefits for Service-Connected Disabilities

## Introduction

### Veterans' Disability Programs

Congress, through the United States Department of Veterans Affairs (VA), provides a wide variety of services and benefits to veterans and to certain members of their families.[1]

Two disability programs are administered by the VA.  These programs pay monthly cash benefits to certain disabled veterans.[2]  *Disability compensation*, the focus of this report, provides a monthly cash benefit if the veteran is at least 10% disabled[3] as a consequence of his/her military service — which is considered to be a *service-connected disability*. A veteran applying for service-connected disability compensation does not need to be totally disabled, have low income, or wartime military service.  In contrast, a *disability pension* may be paid to a *wartime*[4] veteran with limited income, who is no longer able to work, or is at least age 65.  A disability pension is not related to a service-connected injury or medical condition and takes into account the material needs of the veteran; it is a "needs-based" pension.[5]

---

[1] See generally *Federal Benefits for Veterans and Dependents*, published by the Departments of Veterans Affairs (2005 edition).  (Hereafter cited as "*Federal Benefits*.")  See [http://www1.va.gov/opa/vadocs/current_benefits.htm] for the publication.  See CRS Report RL33113, *Veterans Affairs: Basic Eligibility for Disability Benefit Programs*, by Douglas Reid Weimer.  This report deals with the fundamental requirements for disability benefit programs.

[2] See *A Summary of VA Benefits: Putting Veterans First*; VA Pamphlet 21-00-1 (Feb. 2004).  See [http://www.va.gov], click on "Benefits" and then go to "Compensation and Pension."  (Hereafter cited as "*VA Pamphlet*.")

[3] The severity of the veteran's disability is evaluated by the VA and a determination is made as to what percentage of employment capacity is impaired.  See discussion below.

[4] See CRS Report RL33113, *Veterans Affairs: Basic Eligibility for Disability Benefit Programs*, by Douglas Reid Weimer.

[5] *VA Pamphlet*.  For further discussion of a disability pension or a non-service-connected pension, see CRS Report RL33113, *Veterans Affairs: Basic Eligibility for Disability Benefit Programs*, by Douglas Reid Weimer.

CRS-2

## The "Local Determination"

The VA analyzes each veteran's claim for disability compensation at the VA regional office closest to the veteran's residence, called the "local determination." This determination involves a four-step adjudication process of the veteran's claim.

First, the VA determines the claimant's basic eligibility to receive VA benefits. A determination is made as to whether the claimant was discharged or separated under other than dishonorable conditions,[6] whether the claimant had "active service,"[7] and whether the claimant's condition is based upon the veteran's willful misconduct.[8]

Second, if the claimant is found eligible for benefits,[9] the VA then determines whether the veteran qualifies for in-service disability compensation.

Third, if the VA determines that the veteran is entitled to disability compensation, the VA then evaluates the extent of the disability and makes a determination of the percentage of the disability based upon the "Schedule for Rating Disabilities."[10]  Findings adverse to the interests of the veteran may be appealed administratively.

Fourth, the VA establishes the effective date for the award.

## Requirements for Disability Compensation[11]

The purpose of disability compensation is to assist currently disabled veterans whose injury is connected to military service, and to that end, a veteran[12] must meet three basic criteria to the VA's satisfaction.

- *One:* A recent medical diagnosis of a *current* impairment, disability, or disease.

- *Two:* Medical or, on occasion, lay evidence of an *in-service* occurrence or aggravation of the disease or injury.

---

[6] See CRS Report RL33113, *Veterans Affairs: Basic Eligibility for Disability Benefit Programs,* by Douglas Reid Weimer.

[7] *Id.* at 4-5.

[8] *Id.* at 7-8.

[9] Hence, the claimant becomes a "veteran" for purposes of benefits.

[10] 38 U.S.C. § 1155; 38 C.F.R. § 4.  See discussion below.

[11] See Barton F. Stichman et al., *Veterans Benefits Manual* at § 3.1.5.  (Hereafter cited as "*Veterans Benefits Manual.*")

[12] For the purposes of this report, it is assumed that the claimant/applicant has met the very basic eligibility requirements for VA benefits.  The claimant/applicant will be referred to as the "veteran" for the remainder of this report.

CRS-3

- *Three:* Medical proof of a *connection* between the in-service occurrence or aggravation of an injury or illness and the current disability.

Each of these requirements is examined below.

## Medical Evidence of the Current Impairment or Disability

Disability compensation is available only to veterans with current disabilities.[13] Although a veteran may have had an illness or injury during his/her service time, the mere fact that this occurred is not compensable.

To provide evidence of the current medical problem, the veteran may submit medical records of the current diagnosis and/or treatment. Letters from physicians may be added to the record. Generally speaking, lay evidence of a medical condition is not sufficient. The VA has certain duties to assist veterans in the application process.[14] The VA must assist by providing the veteran with the appropriate records.[15] Usually, the VA is required to provide veterans with a medical exam in order to diagnose a current medical condition.[16] However, certain circumstances may exist under which the VA may not be required to provide such an examination or assistance to the veteran.[17] In addition, the VA must advise veterans of incomplete applications[18] and evidence which is needed to evaluate the veteran's claim.[19]

## Evidence of an In-Service Occurrence or Aggravation of the Disease or Injury

The veteran's second requirement for disability compensation is that there is medical or, under certain circumstances, lay evidence of an in-service occurrence or aggravation of a disease or injury. The in-service requirement is construed broadly. A disability incident or onset of disability is not required to be related to the veteran's military responsibilities and is covered even if it occurred during leave.[20] Further, the evidence submitted on the record must only demonstrate that it is as likely as not that there was an in-service aggravation or occurrence of a disease or injury. When there

---

[13] 38 U.S.C. §§ 1110, 1131. These provisions deal with the basic entitlement for disability compensation.

[14] 38 U.S.C. § 5103A.

[15] 38 U.S.C. §§ 5103A(b),(c).

[16] 38 U.S.C. § 5103A(d).

[17] 38 U.S.C. § 5103A(a)(2).

[18] 38 U.S.C. § 5102(b).

[19] 38 U.S.C. § 5103(a).

[20] For example, a veteran may receive compensation for a medical condition that resulted from a sports injury incurred during in-service time. See *Veterans Benefit Manual* at §3.1.1.1.

CRS-4

is nearly equal positive and negative evidence regarding a material issue, the Secretary is required to give the benefit of the doubt to the veteran.[21]

The veteran must submit corroborating evidence of the incident.[22] He/she must prepare and submit a statement describing the occurrence, disease, or injury in detail, along with the circumstances surrounding the event. The type of evidence that the veteran must submit may depend upon the type of injury or disease which is being connected to the time of service. For example, a veteran who sustained a fall while in-service might produce evidence of medical treatment for the fall at the time of its occurrence and evidence from military personnel who witnessed the fall.

## Medical Proof of a Connection Between the In-Service Incident or Aggravation or an Injury/Illness and the Current Disability

This third element requires that there must be a *link* between the current injury or illness (requirement 1) and that the disease, injury, or event happened during a period of military service (requirement 2). This requirement is sometimes known as service-connected, the "service connection," or the nexus requirement.

Statutes and regulations require proof of one of five types of connections. *One:* there is a direct connection between the current disability and an incident that happened during the period of military service.[23] *Two:* the current medical condition existed prior to service but was exacerbated during service.[24] *Three:* the current medical problem did not appear during military service, but is presumed to have begun or be connected with something that occurred during service, either by statute or by VA regulation.[25] *Four:* The present problem is the result of a primary medical condition, and that condition is connected to a period of military service.[26] *Five:* the

---

[21] 38 U.S.C. § 5107(b).

[22] 38 C.F.R. § 3.303.

[23] 38 C.F.R. §§ 3.303(a), 3.304, 3.305. See also 38 U.S.C. § 1154. In determining whether the current condition relates to the in-service problem, the VA determines whether the problem is *acute* or *chronic*. An acute problem is considered to be a problem of relatively short duration. A chronic condition is of lengthy duration and may return.

[24] 38 U.S.C. § 1153; 38 C.F.R. § 3.306(a). If the disability existed prior to service, the VA must ascertain whether there was an *increase in the disability during service*. The preexisting problem will not be considered to be aggravated by service if the VA determines that the exacerbation resulted from the natural progression of the disease.

[25] 38 U.S.C. §§ 1112, 1116, 1133; 38 C.F.R. §§ 3.307-3.309; 38 C.F.R. § 3.313(b). If the disability claimed is a disease which was not diagnosed or recorded on the veteran's service record, the VA is required to ascertain whether the *incubation time* for the disease could have started during in-service time (38 C.F.R. § 3.03(d)).

[26] 38 C.F.R. § 3.310(a). If the disability claimed cannot be determined to be in-service, either directly or by exacerbation, the VA will then decide whether the problem may be *service-connected on a secondary basis*. This reasoning is based on the theory that it was proximately caused by a service-connected condition. For instance, a primary disease is

(continued...)

CRS-5

condition is the result of an injury caused by VA health service, VA training/rehabilitation services, or by participation in a VA sponsored work therapy program.[27]

In order to establish this connection, it is necessary to have adequate medical evidence in the claim.[28] What this signifies is that for the in-service connection to be approved, the veteran is required to have medical proof that the disease, injury, or event which occurred during service *actually caused* the veteran's current disability.

# The VA's Obligations in the Preparation/Presentation of the Veteran's Case and Certain Presumptions

The VA is required by law to use certain standards in the review of a veteran's claims, and the VA has certain statutory obligations in the preparation of the veteran's case. In addition, statute and regulations provide for certain presumptions of disability as a result of certain occurrences. These standards, requirements, and presumptions are summarized below.

## Standard of Proof

As explained, to receive disability benefits evidence is required to prove a connection between an in-service incident and a current disability, but in assessing evidence on these elements the veteran is to be given the "benefit of the doubt."[29] The statute provides that "When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."[30] Regulations provide that when reasonable doubt arises, such doubt will be resolved in favor of the claimant.[31] Hence, in order to satisfy this element, the submitted medical evidence generally needs to show that it is as likely as not, that there is a connection between the in-service injury, occurrence, or illness and the current disability.

---

[26] (...continued)
contracted in-service. A related, secondary disease develops as a result of the primary disease.

[27] 38 U.S.C. § 1151.

[28] 38 U.S.C. § 5107.

[29] 38 U.S.C. § 5107(b).

[30] *Id.*

[31] 38 C.F.R. § 3.102.

CRS-6

## Assistance in Case Preparation

The VA has a responsibility to assist the veteran in developing a claim. Among other things, the VA is required to advise the veteran of the type of evidence that will need to be submitted to substantiate the claim.[32]

The VA also must make service and medical records available to veterans for the preparation of their cases.[33]   Such records are often crucial in proving the veteran's claim. In many instances, the VA is required to provide veterans with a *medical examination* in order to diagnose the current medical condition.[34]  However, under certain circumstances the VA may not be required to provide assistance to the veteran.[35]

## Certain Presumptions

In its analysis of certain claims, the VA is required by statute and/or regulation to make certain presumptions.

**Presumption of Medical Soundness.** In evaluating a veteran's claim, the VA generally presumes that the veteran entered the service in sound medical condition.[36]  This may assist the veteran in proving a claim by making it difficult for the VA to claim that the condition or disease existed prior to service. However, if the medical impairment was noted at the time of entry into service, the veteran may have to prove that the condition was exacerbated in-service. If the VA is able to prove by "clear and unmistakable evidence" that the disease or injury was in existence prior to service, and that it was not worsened during service, the veteran's claim will be denied.

**Special Rules for Certain In-Service Occurrences.** Special rules exist under which the VA is required to consider a service-connected problem by presumption. For example, certain diseases associated with exposure to Agent Orange will be presumed to be service-related in the case of Vietnam veterans. [37]

A similar regulation holds that veterans who were held prisoners of war, or who served in combat, can be presumed to have suffered traumatic, stressful events during their military service.[38]  Similarly, combat veterans have special rules applicable to

---

[32] 38 U.S.C. § 5103(a).

[33] 38 U.S.C. §§ 5103A(b), (c).

[34] 38 U.S.C. § 5103A(d).

[35] 38 U.S.C. § 5103A(a)(2).

[36] 38 U.S.C. § 1111.

[37] 38 C.F.R. § 3.307(a)(6)(iii).

[38] 38 C.F.R. § 3.304(f).

CRS-7

them in proving an in-service injury, or other incident.[39] Usually, if a combat veteran states that he/she suffered a disease, injury, or other event during combat, the VA will usually accept that statement as fact. This is the case even if there are no service records to substantiate the claim.

# The VA Rating System

Congress has established by statute a rating system to categorize a veteran's degree of disability for in-service injuries.[40] This system is implemented by the VA through a series of complex regulations and procedures.

After the VA determines that a disability is service-connected, the VA regional office level goes through a review process (the "rating activity") to determine the disability rating (on a percentage basis). As used by the VA, the term "disability" is defined as "the average impairment in earning capacity" that results from diseases, injuries, or their resultant aftermath.[41]

## Schedule for Rating Disabilities (SRD)

By authority of Congress the VA set up the Schedule for Rating Disabilities ("SRD"), which rates various disabilities on a percentage basis.[42] The statute provides for ten grades of disability,[43] and the higher the disability determination, the higher is the monthly compensation that the veteran receives. The VA determines the disability level for an eligible veteran, and Congress sets the compensation rates for veterans based on ratings. [44]

Again, in making individual determinations, the VA and the Board of Veterans' Appeals (BVA) apply the various ratings of the SRD.[45] The SRD is detailed: various sections deal with injuries or diseases that impact particular body functions/parts,

---

[39] 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d),(f).

[40] 38 U.S.C. § 1155.

[41] 38 C.F.R. § 4.1.

[42] 38 U.S.C. §§ 1155.

[43] 10% through 100%.

[44] The current monthly rates, effective on December 1, 2005, are as follows: an unmarried veteran without dependents and with a 10% disability receives $112 per month. The rates increase to a 100% disability payment of $2,393 per month. See Federal Benefits at 73. For rate tables and a compensation calculator, see [http://www.vba.va.gov/bln/21/ Rates/comp01.htm]. The payment rates are not automatically adjusted for inflation and are only increased if Congress passes enabling legislation. Congress usually grants an increase based on the consumer price index or the cost-of-living formula used to determine the social security old age increase. The 2006 rates were set by P.L. 109-111, 109th Cong., 1st Sess. (2005), the "Veterans' Compensation Cost-of-Living Adjustment Act of 2005."

[45] 38 C.F.R. § 4.1.

CRS-8

including the musculoskeletal system,[46] eyes,[47] and other functions such as hearing and eye diseases, infectious diseases, respiratory system, cardiovascular system, digestive system, genitourinary system, gynecological conditions, and other functions. Each of these sections of the SRD (dealing with a particular body part or function) has a series of medical diagnoses with a numerical diagnostic code (dc) that breaks down percentages of disability[48] based upon the severity of the disability. Each degree of disability under each dc has a description of the symptoms that the claimant veteran must have in order to qualify for that rating. The disability degree increases with the increase in the severity of the symptoms.

## Application of the Rating System

Applying this rating system, the VA examines the veteran's medical records to determine the medical diagnosis for the veteran's service-connected disability. The VA then finds the applicable diagnostic code for the disability and finds the degree of disability that is appropriate to the symptoms and diagnosis of the veteran's condition. If a rating falls between two ratings, and the symptoms are closer to the higher rating, then the higher rating will be selected.[49] In makings its determination, the VA examines all of the available evidence, including service records, lay statements, and medical records and other evidence.[50]

**Complications in the Use of the Rating System.** When the VA applies the diagnostic code(s) to veterans' claims, a number of variables come into play, some which may be quite complex. And while every rating has unique circumstances, VA ratings in similar cases may not always seem consistent. Having to make fine distinctions within an intricate rating system based on a reading of a veteran's symptoms inevitably leads to some claims that a rating is "wrong" or "underrated."

Another complication in the rating process is that a medical condition may be able to be rated under more than one diagnostic code, sometimes to the detriment of the veteran. In addition, not all disabilities and their symptoms and complications are listed on the rating chart, in which case an analogous condition may be used for the rating.[51]

---

[46] 38 C.F.R. §§ 4.40 to 4.73.

[47] 38 C.F.R. § 4.75 to 4.84a.

[48] See 38 C.F.R. § 4.84a for an example of the ratings and diagnostic codes chart for impairment of vision.

[49] 38 C.F.R. § 4.7.

[50] 38 C.F.R. § 3.103(d).

[51] 38 C.F.R. § 4.20. However, if a case when a veteran's disability is so extraordinary or unusual that an analogy cannot be made through use of the rating charts, an "extraschedular rating" for a veteran may be made (38 C.F.R. § 3.321(b)).

CRS-9

A further complication in the rating system occurs when a veteran has two or more service-connected disabilities. In such a circumstance, the overall percentage of disability is determined by combining the individual ratings, but *not by adding them up together*. To calculate the appropriate combined rating, the VA makes a determination by considering each impairment in the order of its severity. Direction on how to make these determinations is contained in the "Combined Rating Table" in the VA regulations.[52]

**Changes in Veterans' Ratings.**   Should the severity of the service-connected disability increase over time, the veteran may apply for an increase in the rated percentage of disability.[53]  Similarly, should the condition improve, the ratings percentage may be decreased, and the monthly payments would decrease.

**Special Monthly Compensation (SMC).**   If a veteran has severe disabilities,[54] he/she may be entitled to special monthly compensation (SMC) which provides compensation payments at a rate higher than the 100% rate.[55]  In addition to the SMC, certain veterans with severe disabilities that require daily assistance or regular health services may be eligible for extra compensation.[56]

**Zero Percent Evaluation.**   If the degree of disability from a service-connected incident does not impair earning capacity, a veteran may receive a 0% rating.[57]  However, even a noncompensable evaluation under certain circumstances may entitle the veteran to preferences in federal or state employment and VA health care.   A noncompensable evaluation may also be used to document a medical condition if it subsequently worsens.

**Periodic Examinations.**  Following the award of compensation benefits, the VA may require periodic examinations to determine whether the condition is constant in its severity and that continued payment of disability compensation is warranted.[58]  The VA is authorized to reexamine veterans receiving compensation benefits at any time.  However, under certain circumstances — if the condition is static  — the VA may not schedule review examinations.

**Appeals from Ratings.**   Some veterans may not be satisfied with their disability rating, and may wish to appeal.  Such an appeal is first undertaken at the local VA level and may eventually proceed to the Court of Veterans Claims ("Court").  The Court examines whether the VA considered all of the appropriate

---

[52] 38 U.S.C. § 1157; 38 C.F.R. § 4.25.

[53] See "Disability Compensation Benefits" at VA website; *A Summary of VA Benefits: Putting Veterans First*, VA Pamphlet 21-00-1 (Feb. 2004); see also [http://www.va.gov], [click on "Benefits," and then go to "Compensation and Pension"].

[54] Such disabilities may involve anatomical loss or the loss of use of a hand or foot.

[55] 38 U.S.C. § 1114(k); 38 C.F.R. § 3.350.

[56] 38 U.S.C. § 1114(r)(2); 38 C.F.R. § 3.352.

[57] Many conditions listed within the ratings tables are rated as 0.  See also 38 C.F.R. § 4.31.

[58] 38 C.F.R. § 3.327(a).

CRS-10

facts and set forth a satisfactory explanation for its choice and application of the diagnostic code.

## Evaluation of the Rating System

A recent Government Accountability Office (GAO) study, *Veterans' Disability Benefits — Claims Processing Challenges and Opportunities for Improvements*[59] evaluated certain aspects of the disability compensation process. GAO noted that the VA provided $30 billion in cash disability benefits to more than 3.4 million veterans and their survivors in FY2004.[60] GAO found that the VA has continuing challenges in the disability compensation process, including large numbers of pending claims and long processing times.[61]

Another issue that GAO highlighted is the lack of consistency and accuracy of rating decisions at and among the VA's 57 regional offices.[62] Consequently, veterans with similar disabilities may receive different evaluations, and hence may receive significantly different compensation from the different VA regional offices. GAO also noted that the VA's evaluative process has not kept pace with recent developments in medical technology.[63]

GAO uncovered another issue — that more recent veterans with severe injuries would appear to favor a lump sum compensation payment, as opposed to monthly compensation payments over an extended period of time.[64]

## Current Legislation[65]

Congress typically has passed legislation annually to provide a COLA in veterans disability compensation equal to the COLA automatically provided under permanent law to recipients of Social Security disability. The Veterans' Compensation Cost-of-Living Adjustment Act of 2005[66] increased, effective December 1, 2005, the rates (dollar amounts) of veteran's disability compensation (as well as for additional compensation for dependents, the clothing allowance for

---

[59] GAO-06-283T, Testimony before the Committee on Veterans' Affairs, House of Representatives; Statement for the Record by Cynthia A. Bascetta, Director, Education, Workforce, and Income Security Issues (GAO) (Dec. 7, 2005).

[60] *Id.* at 1.

[61] *Id.* at 2, 4-6.

[62] *Id.* at 5-7.

[63] *Id.* at 8-9.

[64] *Id.* at 9-10.

[65] See CRS Report RL33216, *Veterans Benefits Issues in the 109th Congress*, by Paul J. Graney.

[66] P.L. 109-111, 109th Cong., 1st sess. (Nov. 22, 2005).

CRS-11

certain disabled veterans, and the dependency and indemnity compensation for surviving spouses and children).[67] This COLA is 4.1%.

The Military Quality of Life and Veterans Affairs Appropriations Act, 2006 requires the VA to conduct an information campaign in those states where the average annual disability compensation is less than $7,300 (according to the report issued by the VA's Office of Inspector General on May 19, 2005).[68] This campaign is to inform all veterans receiving disability compensation (by direct mail) of the history of the below average disability compensation in these states, and to provide all veterans in these states (through broadcast or print advertising) with historical information and instructions for submitting new claims or requesting review of past disability claims and ratings.[69]

Prior to 2004, concurrent payment of military retirement and VA disability benefits was prohibited.[70] Military retirement had been reduced dollar-for-dollar by the amount of the disability compensation received (as retirement pay is taxable while disability benefits are not taxable).   The FY2004 National Defense Authorization Act (NDAA) approved concurrent receipt for retirees with at least a 50% disability.   It established a 10-year schedule to phase-in full payment of retirement benefits.  The FY2005 NDAA repealed this phase-in after December 31, 2004, for a qualified retiree who receives disability compensation for a disability rated as 100%. The FY2006 NDAA accelerated the phase-in for veterans with a full or 100% unemployability rating.[71]

The proposed "Veterans' Benefits Improvement Act of 2005"[72] would impact disability compensation.  Section 301 of the bill requires the Secretary of the VA to prepare an annual plan for outreach activities.  Each plan is to include activities for identifying veterans who are not enrolled or registered for benefits or services with the VA and informing veterans and their dependents of modifications to benefits and services, including eligibility for medical and nursing care and services.  Section 303 would add atherosclerotic heart disease or hypertensive vascular disease, as well as stroke and its complications, to the list of diseases or conditions presumed to be associated with prisoner-of-war status, and therefore compensable under veterans' disability compensation.  Section 304 would require the Secretary to develop and implement policy and training initiatives to standardize the assessment of post traumatic stress disorder compensation claims.

---

[67] This law amended 38 U.S.C. § 114 and established increased monthly payments.

[68] P.L. 109-114, § 228, 119 Stat. 2392 ( Nov. 11, 2005).

[69] *Id.* See CRS Report RL33216, *Veterans Benefits Issues in the 109th Congress*, by Paul J. Graney.

[70] See CRS Issue Brief IB85159, *Military Retirement: Major Legislative Issues*, by Charles A. Henning.

[71] See CRS Report RL33216, *Veterans Benefits Issues in the 109th Congress*, by Paul J. Graney and CRS Issue Brief IB85159, *Military Retirement: Major Legislative Issues*, by Charles A. Henning.

[72] S. 1235, 109th Cong. 1st sess. (2005).  Passed the Senate Sept. 28, 2005.  Referred to the House Committee on Veterans' Affairs Sept. 29, 2005.

CRS-12

In addition, various bills address specific impairments and the relevant disability ratings. For example, section 5 of S. 963[73] provides that a veteran who has lost the use of an arm or leg as the result of a service- connected injury will have a disability rating of not less than 50% disability. If enacted, such legislation would have the effect of legislatively modifying the rating process.

---

[73] 109th Cong., 1st sess. (2005).