FILED
MARCH 26, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRESCENT CARE, LLC d/b/a CARILLON RESOURCES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TOTAL HOME HEALTH, INC.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　No. 08 C 127<br>)<br>)　Judge James B. Moran<br>)<br>)<br>) |

### RESPONSE TO THE PLAINTIFF'S MOTION TO REMAND

　　NOW COMES Defendant Total Home Health, Inc. (hereinafter "Total"), by and through its attorney and files this Response to Crescent Care, LLC d/b/a Carillon Resources (hereinafter "Carillon"):

1. Total's January 4, 2008 Notice of Removal is pleaded upon the federal question jurisdiction provisions of 28 U.S.C. §§ 1331, 1441 and the federal officer provisions of 28 U.S.C. § 1442(a)(1). Total has filed each of a: Notice of Removal; Brief in Support of the Notice of Removal; Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Brief in Support of the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6); each of which, with exhibits thereto, the Defendant adopts by reference as if fully set forth herein pursuant to Federal Rule of Civil Procedure 10(c.); Rodriguez v Cruz, 296 F Supp 2d 726 (2003, SD Tex)(Court could consider earlier pleadings in motion for summary judgment because defendant was entitled under Fed. R. Civ. P. 10(c) to incorporate by reference earlier pleadings). Collectively, this Response and the adopted materials respond to Carillon's Motion.

2. Contrary to the Plaintiffs arguments, Carillon's claim and Total's defense both arise solely

from the Federal Acquisition Regulation's (hereinafter the FAR), 48 C.F.R. 3.400 et.seq, banning contingencies, such as finder's fee agreements, in the procurement of federal contracts except as allowed by the exceptions stated in the Regulation, Miller v. Arkansas, 352 U.S. 187, 190, 77 S.Ct. 257 (1956)(Government Procurement law preempts State law); United States of America v. Commonwealth of Virginia, 139 F.3d 984, 987 (4th Cir. 1998)(FAR preempts State law.); Gartrell Contruction v. Aubry, 940 F.2d 437, 438 (9th Cir. 1990)(Finding government procurement law, like ERISA, as completely preemptive); Mitchell v. Flinkote Corp., 185 F.2d 1008, 1011 (2nd Cir. 1951) cert. denied 341 U.S. 931 (1951)("Order No. 9001 [a precursor to the FAR] states a federal rule of public policy and federal, not state, law governs its applicability. The "checker-board" pattern imposed by Erie R. Co. v. Tompkins is necessarily unsuited to matters subject to federal regulation, and hence state law does not control the disposition of suits which, although they are between non-governmental parties and are brought in a federal court on the basis of diversity of citizenship, involve interpretation or application of federal law.").

Original Subject Matter Jurisdiction of Carillon's
Claim Arises Solely under 48 C.F.R. 3.400 et.seq.

3. The Department of Veterans Affairs (hereinafter VA) has adopted the FAR as its procurement regulation, see 48 C.F.R. 800.000 et.seq., 801.104 (hereinafter VAAR). VA regulations completely pre-empt state law, United States v. Shimer, 367 U.S. 374, 377-381; 81 S. Ct. 1554; 6 L. Ed. 2d 908(1961)("The Regulations promulgated by the Veterans' Administration make clear that they were intended to create a uniform system" … "We have no doubt that this regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection of the interests of the Veterans'

Administration". ... The pertinent act "authorized the Veterans' Administrator to displace state law by establishing these exclusive procedures"); see also FAR, 48 C.F.R. 1.101 (the FAR is promulgated to ensure uniformity across all federal agencies) The authorizing statute to the VA in Shimer is virtually identical[1] to the authorizing statute of the VA to issue regulations for the VAAR in adopting the FAR[2], see 48 C.F.R. 801.103 citing to 40 U.S.C. § 121(c); see also 38 U.S.C. § 501 and 40 U.S.C. § 486 (now restated as 40 U.S.C. § 121). State based theories of relief yield to the federal government's procurement law because of the Supremacy Clause, see Don't Tear It Down, Inc. v. Pennsylvania Ave. Dev. Corp., 642 F.2d 527, 535 (D.C. Cir. 1980) as follows:

> In situations where federal and local enactments overlap in their effects on nongovernmental activities, the Supreme Court has consistently reminded us that, to the extent possible, "the proper approach is to reconcile "the operation of both statutory schemes with one another rather than holding one completely ousted.'"[70] The Court has taken a different tack, however, in cases involving local laws that impact directly on federal operations,[71] on the management of federal installations,[72] or on the use of federal property, where considerations of sovereignty come into play.[73] Insofar as such laws substantially impede federal activities or directly place "a prohibition on the federal government,"[74] the Court has treated them as presumptively invalid under the Supremacy Clause:[75] "where "Congress does not affirmatively declare its instrumentalities or property subject to regulation,' "the federal function must be left free' of regulation."[76] [footnotes 70 through 76 are attached hereto as Ex. A].

---

1. Shimer, supra, footnote 9: "Section 504 of the Act provides: 'The Administrator is authorized to promulgate such rules and regulations not inconsistent with this title, as amended, as are necessary and appropriate for carrying out the provisions of this title, and may delegate to subordinate employees authority to issue certificates, or other evidence of guaranty loans guaranteed under the provisions of this title, and to exercise other administrative functions hereunder.'"
2. 40 U.S.C. § 121(c) Regulations by Administrator.
(1) General authority. The Administrator may prescribe regulations to carry out this subtitle.
(2) Required regulations and orders. The Administrator shall prescribe regulations that the Administrator considers necessary to carry out the Administrator's functions under this subtitle and the head of each executive agency shall issue orders and directives that the agency head considers necessary to carry out the regulations.

3

4. The <u>Don't Tear It Down, Inc.</u>, decision further denoted, at F.2d 536, that this supremacy will only be excepted upon: "a clear congressional mandate,' "specific congressional action' that makes this authorization of (local) regulation "clear and unambiguous.' ". Carillon's Motion for Remand cites no such mandate, and 48 C.F.R. 3.402 states the Congressional mandate against Carillon's position by including the sole remedies in exception thereto:

> 3.402 Statutory requirements.
>
> Contractors' arrangements to pay contingent fees for soliciting or obtaining Government contracts have long been considered contrary to public policy because such arrangements may lead to attempted or actual exercise of improper influence. In 10 U.S.C. 2306(b) and 41 U.S.C. 254(a), Congress affirmed this public policy but permitted certain exceptions. These statutes--
>
> (a) Require in every negotiated contract a warranty by the contractor against contingent fees;
>
> (b) Permit, as an exception to the warranty, contingent fee arrangements between contractors and bona fide employees or bona fide agencies; and
>
> (c) Provide that, for breach or violation of the warranty by the contractor, the Government may annul the contract without liability or deduct from the contract price or consideration, or otherwise recover, the full amount of the contingent fee.

5. Given the law and pleadings referred to above, Carillon's statement in par. 5 of its Motion to Remand denying the federal nature of what it must plead for relief, is incorrect. This case is anything but a "garden variety breach of contract claim" (see, Pltf. Mot. Remand, par. 1). The sole source of recovery for this type of claim can only be pleaded in conformity with the FAR at 48 C.F.R. 3.400 et.seq. as this regulation provides the sole exception to the federal policy ban against contingencies in the acquisition of federal contracts, <u>Hazelton v. Sheckells</u>, 202 U.S. 71, 26 S. Ct. 567, 50 L. Ed. 939 (1906)(Equity does not allow for a recovery which violates United States public policy on the prohibition against

contingencies), LeJohn Manufacturing v. Webb, 222 F.2d 48 (D.C. App. Cir. 1955)(Reversing the District Court for recognizing a 5% commission on sales to the Federal Government); Quinn v. Gulf & Western, 644 F.2d 89, 92-93 (2nd Cir. 1980)(Reversing the District Court and following the prohibition against contingencies); Kashfi v. Phibro-Saloman, 628 F.Supp. 727 (S.D. N.Y. 1986)(Relying on federal procurement law, the district court granted summary judgment against a finder's fee and quantum meruit based on a foreign law which was substantially similar to the United Stated federal contracting bar against contingencies).

6. Moreover, and contrary to the Plaintiff's position on "greed", 48 C.F.R. 3.402(c.) specifically provides that the "contractor" who allows for a violation of this provision is penalized by either a reduction in the contract by the amount of the contingency or the Government can annul the contract without liability. Total, in order to service this multi-year multi-millon dollar VA contract has had to acquire the assets of two other durable medical equipment companies at a cost well in excess of $1,000,000 – events of which Carillon had no role whatsoever. Contrary to Carillon's arguments, it did little if anything to assist in the preparation of Total's bid. Total can not be at risk of losing the VA contract by honoring what amounts to an illegal agreement that on its face attempts to "tie Total's tongue" from the VA by a confidentiality clause. Total's concern in this regard is not mere speculation because 48 C.F.R. 803.4 mandates any VA employee who suspects or has evidence of a violation of the federal policy ban against contingencies must report the matter to the VA contracting officer or the VA Office of Inspector General[3]. 48 C.F.R. 803.4 then

---

3. 803.405 Misrepresentations or violations of the Covenant Against Contingent Fees.

refers to 48 C.F.R. 3.405 with regard to the nature of the administrative action the Contracting Officer must take regarding violation of contingency provisions4. The effect of these regulations mandates Total's repudiation of the Carillon finder's fee agreement in order to ensure compliance with 48 C.F.R. 3.400 et. seq. Similarly, the issues of "greed" and proof of a specific directive proving the nature of the federal policy ban against contingencies was specifically reviewed and rejected in Quinn v. Gulf & Western, 644 F.2d 89, 92-93 (2nd Cir. 1980):

> We conclude that the district court should have dismissed the complaint in regard to the claim for a commission on the TVA contract. It is well established that a contract between private parties for a contingent fee, in violation of Federal

---

(a) A VA employee who suspects or has evidence of an attempted or actual exercise of improper influence, misrepresentation of a contingent fee arrangement, or any other violation of the Covenant Against Contingent Fees must report the matter to the contracting officer or to the VA Office of Inspector General.
(b) In addition to the requirement in paragraph (a) of this section, a contracting officer must report a suspected or actual misrepresentation or violation to the DSPE.
(c) Before taking any administrative action under FAR 3.405, a contracting officer must consult with his or her Regional Counsel. A contracting officer in the Central Office must consult with OGC.
(d) Contracting officers shall route any referrals of suspected fraudulent or criminal matters to the Department of Justice under FAR 3.405(b)(4) through OGC or the VA Office of the Inspector General, with a copy to the Assistant Secretary for Management. The General Counsel or the Inspector General will determine whether to forward the referral to the Department of Justice.

4. 3.405 Misrepresentations or violations of the Covenant Against Contingent Fees.
(a) Government personnel who suspect or have evidence of attempted or actual exercise of improper influence, misrepresentation of a contingent fee arrangement, or other violation of the Covenant Against Contingent Fees shall report the matter promptly to the contracting officer or appropriate higher authority in accordance with agency procedures.
(b) When there is specific evidence or other reasonable basis to suspect one or more of the violations in paragraph (a) above, the chief of the contracting office shall review the facts and, if appropriate, take or direct one or more of the following, or other, actions:
(1) If before award, reject the bid or proposal.
(2) If after award, enforce the Government's right to annul the contract or to recover the fee.
(3) Initiate suspension or debarment action under subpart 9.4.
(4) Refer suspected fraudulent or criminal matters to the Department of Justice, as prescribed in agency regulations.

> Procurement Regulations, will not be enforced. See, e. g., Mitchell v. Flintkote Co., 185 F.2d 1008 (2d Cir. 1951), cert. denied, 341 U.S. 931, 71 S. Ct. 804, 95 L. Ed. 1361 (1951); Bradley v. American Radiator & Standard Sanitary Corp., 159 F.2d 39 (2d Cir. 1947), aff'g 6 F.R.D. 37 (S.D.N.Y.1946); Weitzel v. Brown-Neil Corp., 251 F.2d 661 (4th Cir. 1958).
>
> …In Mitchell, supra, Bradley, supra, and Weitzel, supra, the lack of a specific directive that such arrangements were invalid was held to be unavailing. See also LeJohn Manufacturing Company v. Webb, 95 U.S. App. D.C. 358, 222 F.2d 48 (1955); E. F. Higgins, Inc. v. R. L. Pohlman Co., 491 S.W.2d 249 (Mo.1973).…
>
> Quinn also argues, as did the unsuccessful plaintiffs in these cases, that to deny him recovery would permit the government contractor to profit from its own wrong in violating the warranty against contingent fees. But there can be no profit, for the government can exercise its right, under 41 C.F.R. § 1-1.503, to recover from a contractor the full amount of any contingent fee the contractor has agreed to pay in violation of its warranty. In any event, it is clearly against public policy for the courts to lend themselves to a recovery of contingent fees which are agreed to in violation of valid government regulations, necessary to protect the government against improvident contracts, excessive costs, and the possible corruption of public officials. We therefore see no reason to depart from the consistent and well-founded body of decisions denying enforcement to commission and contingent fee arrangements.

Although the above quote and string cites from Quinn clearly lay out that the federal policy ban on contingencies need not arise from a specific directive, the FAR in fact provides this directive at 48 C.F.R. 3.403 as follows: "This subpart applies to all contracts. Statutory requirements for negotiated contracts are, as a matter of policy, extended to sealed bid contracts.". As such, the VAAR, in adoption of the FAR, includes the policy ban in all contracts regardless of warranties or clauses because the regulations include the ban as a matter of law. As such, Carillon's railing in pars. 36 through 43 of its Motion about proof in support of the Federal Defense is meritless. The policy ban against contingencies applies regardless of an express directive, Quinn, supra, and it applies to every federal Contract, see, 48 C.F.R. 1.101 ("The Federal Acquisition Regulations System is established for the

codification and publication of uniform policies and procedures for acquisition by all executive agencies. The Federal Acquisition Regulations System consists of the Federal Acquisition Regulation (FAR), which is the primary document, and agency acquisition regulations that implement or supplement the FAR" ...); Hazelton v. Sheckells, 202 U.S. 71, 79, 26 S. Ct. 567, 50 L. Ed. 939 (1906)(The Court held such contingencies were barred across all of the federal government and unlike 48 C.F.R. 3.400 et.seq. it provided no exceptions. As such, it is Carillon's burden to plead and prove a federal exception to a judicial policy ban that contains none. 48 C.F.R. 3.400 et.seq. is the only exception.) as follows:

> The general principle was laid down broadly in Tool Co. v. Norris, 2 Wall. 45, 54, that an agreement for compensation to procure a contract from the Government to furnish its supplies could not be enforced irrespective of the question whether improper means were contemplated or used for procuring it. McMullen v. Hoffman, 174 U.S. 639, 648. And it was said that there is no real difference in principle between agreements to procure favors from legislative bodies, and agreements to procure favors in the shape of contracts from the heads of departments. 2 Wall. 55. In Marshall v. Baltimore & Ohio R.R., 16 How. 314, 336, it was said that all contracts for a contingent compensation for obtaining legislation were void, citing, among other cases, Clippinger v. Hepbaugh, 5 W. & S. 315, and Wood v. McCann, 6 Dana (Ky.), 366. See also Mills v. Mills, 40 N.Y. 543. There are other objections which would have to be answered before the bill could be sustained, but that which we have stated goes to the root of the contract and is enought (sic) to dispose of the case under the decisions heretofore made.

Consequently, Carillon, if it desires to attempt a recovery under the agreement it attached to its' State complaint, it must first plead, and if not dismissed, then prove, that its confidential finder's fee agreement conforms with 48 C.F.R. 3.400 et.seq. For the reasons set forth in Total's Motion to Dismiss and Brief in Support thereof, Carillon has not pleaded such a claim and given the nature of its finder's fee agreement will not be able to so plead.

7. In light of the above cites and pleadings, Carillon's use of Bennet v. Southwest Airlines Co.,

493 F.3d 762 (7th Cir. 2007) is misapplied because the "arising under jurisdiction" of the federal question of Carillon's relief emanates from the Supremacy of federal procurement law, Don't Tear It Down, Inc. v. Pennsylvania Ave. Dev. Corp., 642 F.2d 527, 535 (D.C. Cir. 1980); Miller v. Arkansas, 352 U.S. 187, 190, 77 S.Ct. 257 (1956)(Government procurement law preempts State law); Gartrell Contruction v. Aubry, 940 F.2d 437, 438 (9th Cir. 1990)(Federal procurement law preempts State law. The breadth of this preemption was sufficient to avoid the abstention doctrine.); United States v. Shimer, 367 U.S. 374; 81 S. Ct. 1554; 6 L. Ed. 2d 908(1961)(VA regulations are considered as a complete form of regulation replacing State law).

8. The complete preemption afforded the VAAR and the FAR as the sole remedy for contingencies as arise under 48 C.F.R. 3.400 et.seq., by placing subject matter jurisdiction in the Federal Court, is illustrated by Gartrell Contruction v. Aubry, 940 F.2d 437, 438 (9th Cir. 1990). California assessed civil penalties in the amount of $ 57,600 against Gartrell pursuant to Labor Code section 1023, a judgment in this amount was entered in Superior Court. Instead of removing the State proceeding, Gartrell accomplished the same result by filing a separate injunctive and declaratory action in Federal Court. Diversity between the parties did not exist thus the Court only had jurisdiction based upon original subject matter jurisdiction. California contended that the federal district court was required to abstain from exercising jurisdiction under the doctrine of Younger v. Harris, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971). The district court rejected this claim finding the FAR similar to ERISA as follows at F.2d 442:

> No significant state interest is served where the state law is preempted by federal law and that preemption is "readily apparent." *Champion Int'l Corp. v. Brown, 731 F.2d 1406 (9th Cir. 1984)*. See *Fresh Int'l Corp. v. Agricultural Labor*

<blockquote>

*Relations Bd.*, 805 F.2d 1353, 1361 (9th Cir. 1986). In such a case, the state tribunal is acting beyond its authority and *Younger* abstention is not required. In *Champion*, we held that the state did not have a substantial interest in enforcing its age discrimination laws because it was readily apparent that those laws were preempted by ERISA. *Champion*, 731 F.2d at 1408-09. *Champion* was decided shortly after the Supreme Court announced in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983), that a state law similar to that challenged in *Champion* was preempted by the Employment Retirement Income Security Act of 1974 (ERISA). As we have explained above, the Supreme Court announced nearly thirty-five years ago that a law similar to California Labor Code section 1021 was preempted by federal law. *See Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 1 L. Ed. 2d 231, 77 S. Ct. 257 (1956). The passage of time has not weakened that announcement. Preemption is readily apparent under *Leslie Miller*; the district court properly declined to abstain under *Younger*.

</blockquote>

As such, the district court then enjoined California from enforcing Labor Code section 1021. In applying Leslie Miller, when dealing with a State's attempt to impact federal procurement law, the Gartrell court states at F.2d 440 : "The concern in *Leslie Miller* was that a state was asserting a right or power of review over the federal government's determination of 'responsibility.' The Court did not focus on the distinction between bidding and performance but on the state's interference with the federal government's responsibility determination.". This is exactly what is determined under 48 C.F.R. 3.400 - the responsibility, as determined by the VA under the FAR and the VAAR, regarding who and under what circumstances a contingency agreement will be excepted from the general federal policy ban. The Seventh Circuit Court of Appeals cited to Gartrell in Arkebauer v. Kiley, 985 F.2d 1351, 1357 (7th Cir. 1993)(Using Gartrell in the context of the Younger doctrine) and Trust & Inv. Advisers v. Hogsett, 43 F.3d 290, 294 (7th Cir. 1994)(citing to Gartrell at F.3d 293).

9. The nature of the tension between preemption and abstention was also reviewed in Trust & Inv. Advisers v. Hogsett, 43 F.3d 290, 294 (7th Cir. 1994)(citing to Gartrell at F.3d 293).

The Court in Trust & Inv. Advisers held that "Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them" and that "[a] fundamental assumption underlying the Younger abstention doctrine is the presence of a competent state forum". Therein lies the understanding of why a federal court is the venue of original subject matter jurisdiction in this case. Carillon is attempting to use State law theories to regulate the recovery, if any, that is controlled by federal procurement law in a manner similar to the Supreme Court's recent rejection of a Plaintiff's attempt to use New York tort law to regulate in contravention of the Medical Device Amendments of 1976 (ie MDA), see Riegel v. Medtronic, Inc., --- U.S. --- (Decided February 20, 2008). In Riegel, the preemption arose from the language of the MDA which provides that no State or political subdivision may establish or continue in effect a device intended for human use different from the requirement of the MDA. The court held that the tort law of New York sought to regulate contary to the MDA therefore the MDA preempted New York's tort law.

10. The history of preemption and Supremacy of federal procurement law arises from case law and the breadth VA's authorizing statutes, see, Shimer, supra, and 40 U.S.C. § 121(c); see also 38 U.S.C. § 501 and 40 U.S.C. § 486 (now restated as 40 U.S.C. § 121). This history was reviewed in United States Postal Serv. v. City of Hollywood, 974 F. Supp. 1459 (S.D. Fla. 1994):

> The law in this area traces to *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579 (1819), where the Supreme Court, in an opinion authored by Chief Justice Marshall, held that the supremacy clause of the United States Constitution prevented Maryland from levying a stamp tax on a branch of the Bank of the United States, a corporation chartered by Congress. The Chief Justice concluded that the states could not tax or control a federal instrumentaility. 17 U.S. at 428-31. Operation of a federal instrumentality necessarily affects the interests of all since it is for the benefit of all; the national power must therefore remain unfettered if control and representation are to be coincident: "In the legislature of the Union alone, all are represented. The legislature of

11

the Union alone, therefore, can be trusted by the people with the power of controlling measures which concern all in the confidence it will not be abused." 17 U.S. at 435-36. *McCulloch* announced the rule that has been followed ever since: If Congress does not authorize regulation of federal instrumentalities, the possibility of interference with substantive federal policy is sufficient to raise a presumption of immunity. *See, Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 865, 6 L. Ed. 204 (1824) (rejecting Ohio's argument that the presumption when Congress is silent should be against immunity).

The leading case on the application of the supremacy clause to the exercise of postal power is *Johnson v. State of Maryland*, 254 U.S. 51, 65 L. Ed. 126, 41 S. Ct. 16 (U.S. 1920) which held that a postal employee could not be required by state law to obtain a driver's license to drive a mail truck. In an opinion written by Justice Holmes, the Court stated:

> It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer, upon examination, that they are competent for a necessary part of them, and pay a fee for permission to go on. Such a requirement does not merely touch the government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders, and requires qualifications in addition to those that the government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work, and that duty it must be presumed has been performed. 254 U.S. at 57.

*See also, Leslie Miller, Inc. v. State of Ark.*, 352 U.S. 187, 1 L. Ed. 2d 231, 77 S. Ct. 257 (U.S. 1956) ("subjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of 'responsibility' and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder.")

11. <u>United States Postal Service</u>, supra, in tracing the preemption and Supremacy issue makes clear that an instrumentality of the United States is immune from State control absent federal legislation to the contrary. Total as a federal contractor for the VA is an instrumentality of the VA, see <u>Leslie Miller</u>, supra. Nothing in the FAR or the VAAR cedes State control over the decisional responsibility to determine that which is excepted from the federal policy ban against contingencies in 48 C.F.R. 3.400 et.seq. As such, Illinois legal theories of recovery are preempted by the federal procurement law which is the sole theory

of relief on the issue of the application of the federal policy ban against contingencies. As nothing in the FAR or the VAAR, nor the statutes on which they arise, provides for State regulation of the federal policy ban against contingencies it follows that such legal determination rests solely as a federal question for the federal court under its original subject matter jurisdiction.

Total Has Proven Federal Officer Jurisdiction

12. Carillon next attempts to place the focus of the nexus as the time at which the contract was signed (ie October 2, 2006). Carillon purports at par. 6 of its Motion and later in par. 26 et.seq, that Total is asserting that it was acting under a federal officer at the time of signing the contract. Carillon refers to par. 8 of the Notice of Removal, however that paragraph does not refer to the time of signing Carillon's agreement, to wit:

> Pursuant to the FAR the officers of Total Home Health, Inc. are acting under the officers of the VA in the execution of the VA contract in providing benefits to the beneficiaries of the VISN 12 area for purposes of 28 U.S.C. § 1442(a)(1). Attached hereto as Ex. D, is the affidavit with supporting records of Alan P. Kirk, Vice President of Total Home Health, Inc. in support of 28 U.S.C. § 1442(a)(1).

Carillon's attempt to shift the focus of the nexus as referred to in par. 6 of the Motion to Remand is also contradicted by par. 2 of the Motion for Remand in that it "seeks payment of the fee" which according to facts in the State Complaint was purportedly due on or about August, 9, 2007. It is this purported failure to pay on or about August 9, 2007 that is thrust of the alleged breach.

13. Carillon's desire to shift the time frame is both self serving and illusory because the purported finder's fee contract, pursuant to par. 6 thereof, does not purport to become effective until after Total has bid and then later been accepted for the VA contract. The

entire 5% finder's fee is contingent upon success in bidding the VA agreement. Until this success occurred the entire agreement remained in an executory status. If successful bidding arises, then Total is under the authority of VA officers including the proscriptions against contingencies as arise under the VAAR and FAR at 48 C.F.R. 3.400 et. seq. Attached to the Notice of Removal at Ex. D is the Affidavit of Allen Porter Kirk which contains portions of the VA contract awarded on May 17, 2007. Prior to May 17, 2007 neither an alleged breach nor repudiation were at issue because Total had not yet been awarded any contract rights. After May 17, 2007, Total was acting at the direction of VA officers including the dates of repudiation as arose in June of 2007. The letter of June 8, 2007, document 11-5 of Plaintiff's motion to remand, in addition to citing Illinois case law, contains a reservation of all of Total's rights as may arise in law or equity. It is of no moment that Total believes Carillon has no enforceable agreement under either State or Federal law, see <u>Magnin v. Teledyne etc.</u>, 91 F.3d 1424, 1428 (11th Cir. 1996):

> It is not of "any objection that questions are involved which are not all of a Federal character. If one [question of Federal character] exists, if there be a single such ingredient in the mass, it is sufficient. That element is decisive upon the subject of jurisdiction." <u>Mesa, 489 U.S. at 129, 109 S. Ct. at 964</u>

The federal citations, as provided by letter dated June 14, 2007 to opposing counsel at tab 2 of its Motion to Remand, simply arose after the first letter. Under the quote from <u>Magnin</u> above, neither the timing nor the composition of the "ingredients in the mass" are decisive upon the subject of jurisdiction. Rather, it is the existence of the ingredients.

14. Plaintiff's analysis is also flawed because they are suing, assuming in arguendo enforceability, for breach of the agreement but not to establish its execution date. There was no alleged breach during October of 2006 nor could there be as the VA contract had not

even been bid at that point. In fact the Complaint refers, for purposes of the alleged breach, to the lack of payment of the purported finder's fee which, according to Carillon's allegations, should have started on or about August 9, 2007 (see Complaint, par. 16, document 11-4 to the Motion to Remand). As such, the purported breach alleged by the Complaint, due to non-payment of the purported finder's fee agreement, clearly arises in the post award time frame during which Total was working under the authority of federal officers as demonstrated by Alan Porter Kirk's affidavit. The authority of those VA officers mandates action against Total if it pays money pursuant to an agreement that violates the federal policy ban against contingencies, 48 C.F.R. 803.4, 48 C.F.R. 3.405. This left Total with no option but to repudiate the agreement via correspondence to Carillon and its counsel because the agreement does not comply with 48 C.F.R. 3.400 et. seq. and it contains a confidentiality agreement that does not allow Total to disclose the agreement to the VA. The federal policy ban against contingencies was clearly subverted by Carillon's agreement because it engenders secrecy as a mechanism to avoid the policy- such sub rosa conditions are repugnant of the open disclosure sought of government contractors by the FAR and the VA. Clearly, nothing in 48 C.F.R. 3.400 et.seq. supports the use of secrecy clauses as a proper method to hide illegal contingency agreements from the VA – nor should it.

15. The affidavit of Alan Porter Kirk, Ex. D to the Notice of Removal, demonstrates the extraordinary level of direction and control that the VA officers exercise over Total. This affidavit reflects that Total, through Alan Porter Kirk, reports to VA Contracting Officer Ms. Carol Murphy or her designee Mr. Jon Ohnesorge. The affidavit attaches portions of the 130 page VA contract where the detailed requirements of the Scope, Statement of Work

as well as the Contract Terms and Conditions are set forth. The affidavit further reflects that when the VA receives Freedom of Information Requests to it regarding Total's VA contract, Total responds to Pamela Gerstner, the VA's GLAC FOIA Officer. Next, the affidavit lays out in detail and with exhibits to the Affidavit, how Total must submit Daily Action Reports to the VA's Contracting Officers Technical Representative. The Affidavit then denotes the VA contract language wherein it provides: "The contract shall be for the actual requirements of the VA <u>as ordered by the VA</u> during the life of the contract" (counsel's emphasis). Finally, at Ex. D, in the exhibits thereto at pp. 66 of APK1, also referred to as document 1-5, pp. 27 of 68, the contract requires: "(q) Other compliances. The Contractor shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance under this contract". This catch all provision clearly requires Total's compliance with the federal ban on contingencies in the procurement of federal government contracts in rejecting the legality of Carillon's finder's fee agreement.

16. <u>Noble v. Employers Insurance,</u> 555 F.2d 1257 (5th Cir. 1977), illustrates a case properly removed under section 1442(a)(1). A patient at a Veterans Administration hospital sued the insurer of a surgeon employed by the VA under the Louisiana Direct Action Statute. The Court of Appeals, treating the suit as if it were brought directly against the insured surgeon, found that the surgeon was a person acting under an officer because the surgeon had acted under the immediate supervision of the Administrator of Veteran Affairs, who evaluated the surgeon's performance and determined his hours and working conditions pursuant to federal statute. <u>Id</u>. at 1258-59. The surgeon acted under the VA due to his employment agreement

therewith. Similarly, the VA evaluates Total's performance pursuant to the contract standards of the contract itself and the FAR, 48 C.F.R. 1.102-2, requires Daily Action Reports to the VA Contracting Officer or her designee and controls Total performance for the life of the contract pursuant to the "actual requirements of the VA as ordered by the VA" (Kirk Affidavit and exhibit APK, 1, pp. 45 at B.1a.).

17. Defendants in suits against private companies acting as fiscal intermediaries for the federal Medicare program, in similar fashion to the way Total acts as the durable medical equipment provider to the VA's VISN 12 area (Kirk Affidavit, Ex. APK 1 at pps. 58 – 61), have been found entitled to removal under section 1442(a)(1). See Peterson v. Blue Cross/Blue Shield, 508 F.2d 55 (5th Cir.), cert. denied, 422 U.S. 1043, 45 L. Ed. 2d 694, 95 S. Ct. 2657 (1975); Neurological Assocs. v. Blue Cross/Blue Shield, 632 F. Supp. 1078 (S.D. Fla. 1986);  Group Health Inc. v. Blue Cross Ass'n, 587 F. Supp. 887 (S.D.N.Y. 1984); see also, Kuenstler v. Occidental Life Ins. Co., 292 F. Supp. 532 (C.D. Cal. 1968); Allen v. Allen, 291 F. Supp. 312 (S.D. Iowa 1968). Intermediaries perform the day to day work of administering an ongoing federal program under strict official oversight. For example, an insurer is held to various "performance criteria," the satisfaction of which are necessary if the insurer is to maintain its status as an intermediary. See 42 C.F.R. § 421.120-124 (1990). Similarly, Total acts under the strict oversight of the VA and complies with VA orders for the VA's requirements for the life of the contract in compliance with the detailed contract terms laid out in pages 45 – 85 of the contract (see Ex. D to the Notice of Removal, Kirk Affidavit, Ex. APK 1 containing said pages). Such oversight and detailed regulation of Total by the VA demonstrates the use of federal officer removal per 28 U.S.C. § 1442(a)(1).

Finally, the act of repudiation of the contract itself is called for by the detailed regulation that controls Total's conduct under the VA contract because VA contracting officers are mandated to initiate action against a contractor who violates the provisions of the VAAR and the FAR in prohibition of the federal policy ban against contingencies, see the cites of par. 6 hereof, supra, incorporated as if fully set forth, and the catch all clause of the contract that mandates compliance with regulations at Ex. D, in the exhibits thereto at pp. 66 of APK1, also referred to as document 1-5, pp. 27 of 68, as quoted in par. 6, supra.

18. The Plaintiff cites to Good v. Armstrong World Industries, Inc., 914 F.Supp. 1125, 1128 (E.D. Pa. 1996) for a narrow reading of the Federal Officer removal statute, but see Mitchell v. Ac&S, Inc., 2004 U.S. Dist. LEXIS 29504 (E.D. Va. 2004)(Not reported in F.Supp.)(Distinguishing Good as too narrow and not in keeping with the majority of decisions). Mitchell stated as follows (copy attached as Ex. B):

> Moreover, the strict literal approach taken by the *Good* court has not been adopted by the majority of courts that have considered the federal officer removal statute. *See Crocker v. Borden, Inc.,* 852 F. Supp. 1322, 1326 (E.D. La. 1994) (finding, in facts nearly identical to *Good*, that defendant acted under direction of United States Navy in constructing marine turbines); *Pack,* 838 F. Supp at 1103; *Carter v. Acands, Inc.,* 2002 U.S. Dist. LEXIS 24057, 2002 WL 31682352 *4-5 (E.D. Tex. 2002) (finding that extensive control exercised by United States Navy over production and supply of Westinghouse turbines met section 1442(a) requirements). For prudent reasons and in keeping with the rationale of the federal officer removal statute, these courts have interpreted the language of section 1442(a) more liberally than the *Good* court. Section 1446 does not detail a definition of a "federal officer."To refuse to accept the direction of a branch of the armed services as the direction of a "federal officer" is to "deny that the government is composed of entities as well as people." Kristina L. Garcia, *Comments: The Boyle Festers: How Lax Casual Nexus Requirements and the "Federal Contractor Defense" Are Leading to a Disruption of Comity under the Federal Officer Removal Statute,* 46 Emory L.J. 1629, 1645 (1997) (detailing problems with strict interpretation of "federal officer" in section 1442(a)(1)).

19. Attached to opposing counsel's Motion to Remand is this court's decision in Harris v. Rapid American Corp, 2007 WL 4553082 (N.D.Ill). Harris, like Mitchell above, declines to take a

narrow view of federal officer removal (at pp. 2 of 4): "the policy favoring removal should not be frustrated by a narrow, grudging interpretation of 1442(a)(1), Maypenny, 451 U.S. at 242.".

Wherefore, the notice of removal is proper and the case should proceed in the federal district court, for the reasons stated herein. The Plaintiff's Motion to Remand should be denied.

By: /s/
Thomas H. James of James & Associates, Signing pursuant to Rule 11
James & Associates
PO 398 – 412 2nd Ave
Forreston, IL  61030
ARDC 6200493
Admitted to the N.D. General Bar and Trial Bar:
April 12, 1990