IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRESCENT CARE, LLC d/b/a CARILLON RESOURCES, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 08 C 127 ) |
| TOTAL HOME HEALTH, INC., | ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Crescent Care, LLC, doing business as Carillon Resources, brought this action for breach of contract against defendant Total Home Health, Inc., in Illinois state court. Defendant, arguing federal question jurisdiction and federal officer removal jurisdiction, removed the case here. Plaintiff asks us to remand the case to state court. For the following reasons, we grant plaintiff's request and remand the case to the Circuit Court of Cook County.

### BACKGROUND

This summary is taken from the allegations in plaintiff's complaint. Defendant is in the business of providing medical equipment to end-users. Plaintiff provides business and management consulting services to businesses such as defendant. Plaintiff and defendant have had an ongoing business relationship since 2005, when defendant engaged plaintiff's services to provide personnel training.

In September 2006, plaintiff learned that the federal Department of Veterans Affairs was about to begin accepting bids for a substantial contract for the purchase of medical equipment. Plaintiff approached defendant and proposed to provide defendant with

information regarding the contract and to assist defendant in preparing a bid. In return, defendant was to pay plaintiff a 5% finder's fee calculated on actual receipts by defendant from the VA.

Defendant agreed to the proposal. Plaintiff assisted defendant in preparing the bid and the VA ultimately awarded defendant the contract. The contract is estimated to be worth in excess of $4 million per year for a four-year period. After defendant secured the contract with the VA, defendant repudiated its agreement with plaintiff.

Plaintiff filed suit in Illinois state court and sought a declaratory judgment that the parties have an enforceable agreement, judgment for breach of contract or, alternatively, judgment under the principle of *quantum meruit*. Defendant removed the case to this court

Analysis

We begin our analysis by reiterating the well-established principle that federal courts are courts of limited jurisdiction. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (internal quotations omitted). The federal courts may exercise jurisdiction over state-court actions "of which the District Courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In this case defendant seeks to remove to federal court, so the burden is theirs. Defendant offers us two methods of establishing federal jurisdiction, and we examine each in turn.

1. Federal Officer Removal

First, defendant argues that removal is appropriate under the federal officer removal statute because it was acting under the direction of the VA when it repudiated the contract

with plaintiff. The federal statute permits removal only if the defendant was "acting under" any "agency" or "officer" of "the United States" while carrying out the "act[s]" that are the subject of the plaintiff's complaint. 28 U.S.C. § 1442(a)(1). Removal under § 1442 is the exception to the general rule that removal statutes are to be construed narrowly. Jefferson County, Ala. v. Acker, 527 U.S. 423, 431 (1999). The Supreme Court has held that "the policy favoring [federal officer] removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." Arizona v. Manypenny, 451 U.S. 232, 242 (1981) (internal quotations omitted). See also Watson v. Philip Morris Companies, Inc., 127 S.Ct. 2301, 2304-05 (2007) ("The words 'acting under' are broad, and this Court has made clear that the statute must be 'liberally construed.'") (internal citations omitted).

Under the federal removal statute, courts require the party seeking removal to demonstrate that (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning there is a nexus or causal connection between plaintiff's claims and its actions; and (3) it can assert a colorable federal defense to state law liability. See Jefferson County, 527 U.S. at 431; Mesa v. California, 489 U.S. 121, 129 (1989); Manypenny, 451 U.S. at 242. Both parties accept that plaintiff can be considered a "person" under the statute, even though it is a private corporation, see Papapetrou v. Boeing Co., No. 07 C 5892, 2008 WL 548770, at *3 (N.D. Ill. Feb. 25, 2008), so we begin our examination with the second requirement.

Plaintiff argues that defendant cannot establish a causal connection between the parties' contract and the VA's supervision of the defendant. Defendant contends that its contract with the VA requires it to "comply with all applicable Federal, State, and local laws, executive orders, rules and regulations," and that payments for finder's fees are illegal under

the Federal Acquisition Regulations (see 48 C.F.R. §§ 3.400-406, hereinafter "FAR"), as adopted by the VA (see 48 C.F.R. §§ 801.101, 103, 104, hereinafter "VAAR"). Moreover, the VA requires defendant to attest to such compliance. This level of control, defendant argues, demonstrates that it is acting under the direction of the VA.

Defendant relies on Noble v. Employers Insurance, 555 F.2d 1257 (5th Cir. 1977), to support its argument. It contends that Noble illustrates a case properly removed under § 1442(a)(1). Defendant is correct that Noble demonstrates a properly removed case, but we fail to see how Noble is similar to the case at hand. In Noble, a patient at a VA hospital brought suit under a Louisiana state statute against the insurer of a surgeon employed by the VA in the Department of Medicine and Surgery. The Court of Appeals for the Fifth Circuit treated the case as if it were brought directly against the insured surgeon. The court then held that the surgeon was a person acting under a federal officer because he acted under the immediate supervision of the Administrator of Veterans Affairs, who evaluated his performance and determined his working conditions pursuant to federal statute. Id. at 1258-59. But defendant is not an employee of the VA. It is a private corporation acting as a contractor. This is an entirely different matter.

As an attempt to bridge the gap from employee to contractor, defendant relies on a group of cases that find private companies acting as fiscal intermediaries for the federal Medicare program are entitled to removal under § 1442(a)(1). But again defendant's analogy misses the mark. Fiscal intermediaries are private entities that enter into contracts with the Secretary of the Department of Health and Human Services to administer the Medicare program. Generally they are private insurance companies "that act as the claims processor in the government's stead." Downey v. State Farm Fire & Cas. Co., 266 F.3d 675, 680 (7th Cir.

2001). It is their duty to determine the amount that Medicare providers will receive in reimbursement. Michael Reese Hosp. & Medical Center v. Thompson, 427 F.3d 436, 436 (7th Cir. 2005).

All five of the cases defendant cites hold that federal officer removal is appropriate for fiscal intermediaries where suits commenced in state court had to do with Medicare determinations. *See*, Peterson v. Blue Cross/Blue Shield of Texas, 508 F.2d 55, 58 (5th Cir. 1975) (finding removal appropriate when doctor filed suit in state court seeking damages under state law related to his alleged wrongful suspension under Medicare program by fiscal intermediary); Neurological Associates v. Blue Cross/Blue Shield of Fla., 632 F. Supp. 1078, 1080 (S.D. Fla. 1986) (same); Group Health, Inc. v. Blue Cross Assoc., 587 F. Supp. 887, 891 (S.D.N.Y. 1984) (finding removal appropriate where plaintiff filed suit against intermediary in state court and alleged negligence because intermediary failed to consult HHS before providing plaintiff with advice concerning its duties under the regulations); Kuenstler v. Occidental Life Ins. Co., 292 F.Supp. 532, 535 (C.D. Cal. 1968) (approving of fiscal intermediary's removal of small claims court action to recover denied medical expense); Allen v. Allen, 291 F. Supp. 312 (S.D. Iowa 1968) (finding removal appropriate in state garnishment action against fiscal intermediary). It is entirely logical that fiscal intermediaries would be permitted to remove these cases to federal court because they address the heart of the intermediaries' contracts with HHS – payment or non-payment of Medicare bills. The intermediaries contract to act as a surrogate for the United States, and suits that arise from this arrangement provide the causal nexus to require a federal forum.

Defendant is a different type of contractor. The contract entered into between defendant and the VA is for the delivery of medical equipment. We have no doubt that the VA

has provided defendant with precise specifications as to the type of equipment to be delivered. If this suit revolved around those goods, for instance a products liability action by a patient in a VA hospital that alleges the equipment was somehow faulty, the causal nexus might be satisfied and removal might be appropriate. *See* <u>Watson v. Philip Morris Companies, Inc.</u>, 127 S.Ct. 2301, 2308 (2007) (declining to address whether and when particular circumstances may enable private contractors to invoke federal officer removal, but explaining that federal officer removal may be appropriate for contractors who help "the Government to produce an item that it needs" because such assistance "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks").

But this case has nothing to do with the products defendant delivers to the VA. This is a suit for breach of contract. The contract in question – the contract between plaintiff and defendant, not the contract between defendant and the VA – may very well be subject to the federal regulations banning contingency fees. But the federal officer removal statute authorizes "removal by private parties 'only' if they were 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law.'" <u>Watson</u>, 127 S.Ct. at 2307 (quoting <u>City of Greenwood v. Peacock</u>, 384 U.S. 808, 824 (1966)). The mere fact that federal law is implicated in this suit, and that defendant is subject to federal regulations as a government contractor, is not enough to satisfy the requirement of a causal nexus. *See id.* (explaining that "*compliance* with the law (or *acquiescence* to an order) [is not] 'acting under' a federal official who is giving an order or enforcing the law") (emphasis in original). Moreover, permitting federal officer removal in this case would not further the goals of the statute because the state court lawsuit does not create a significant risk of state court prejudice, there is no risk the lawsuit will disable federal officials from taking necessary action

designed to enforce federal law, and there is no likelihood that the lawsuit will deny a federal forum to an individual entitled to assert a federal claim of immunity. *Id.* at 2307-08.

Accordingly, we hold that defendant was not acting under the direction of a federal officer when it repudiated its contract with plaintiff. Because we have reached this conclusion, we need not examine if defendant has presented a colorable federal defense.

2. Federal Question Jurisdiction

We turn now to defendant's second argument, that removal is appropriate under federal question jurisdiction. We begin our analysis of this argument by noting that jurisdiction under 28 U.S.C. § 1331 is construed much more narrowly than federal officer removal jurisdiction. The concepts of comity and limited federal court jurisdiction require that removal under § 1331 be strictly construed, with any doubt as to the right of removal resulting in remand to state court. Jefferson County, 527 U.S. at 430-31. *See also* Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993).

Generally, under the well-pleaded complaint rule a state law action, such as breach of contract, can only be removed to federal court if Congress expressly allows it or a federal statute entirely displaces the state law cause of action through complete preemption. *See* Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003). Neither party suggests that Congress has expressly allowed removal in this circumstance. But defendant asserts that the VA regulations and federal procurement regulations completely preempt state contract law and therefore we have federal subject matter jurisdiction.

The Seventh Circuit has remarked on more than one occasion that the term "complete preemption" is a misnomer. *See, e.g.,* Adkins v. Ill. Central R.R. Co., 326 F.3d 828, 835 (7th Cir. 2003); Vorhees v. Naper Aero Club, Inc., 272 F.3d 398, 402 (7th Cir. 2001) (citing

Lehmann v. Brown, 230 F.3d 916, 919 (7th Cir. 2000)). Complete preemption is a narrow doctrine that has "nothing to do with preemption and everything to do with federal occupation of a field." Lehmann, 230 F.3d at 919. The unfortunate choice of name sometimes leads to confusion with the concept of conflict preemption, which "exists if it would be impossible for a party to comply with both local and federal requirements or where local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hoagland v. Town of Clear Lake, Ind., 415 F.3d 693, 696 (7th Cir. 2005) (internal quotations omitted). But whereas complete preemption replaces state law with federal law and by doing so creates a federal question, conflict preemption "is merely a defense to the merits of a claim." Vorhees, 272 F.3d at 403. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction. *Id.*

The Supreme Court has acknowledged only three areas in which Congress intended for federal law to completely displace state law actions: actions that fall under the Labor Management Relations Act, 29 U.S.C. § 185, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, and the National Bank Act, 12 U.S.C. §§ 85, 86. *See* Avco Corp. v. Aero Lodge No. 735, Machinists, 390 U.S. 557 (1968); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987); Beneficial, 539 U.S. at 10-11. The Seventh Circuit Court of Appeals recognized one additional area in which Congress made its intention to completely occupy the field clear: the regulation of mobile telecommunication rates and market entry. *See* Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983, 986-87 (7th Cir. 2000) (quoting 47 U.S.C. § 332(c)(3) ("no State or local government shall have *any* authority to impose any rate or entry regulation upon any private land mobile service.")).

In addition to these four areas, defendant would have us establish a fifth area.

Defendant is not precise in how it defines this new area of complete preemption. At first, it seems that defendant argues that the new area includes all things having to do with the VA. As support for this argument, defendant relies primarily on United States v. Shimer, 367 U.S. 374 (1961). In Shimer, the Supreme Court considered the responsibility of the parties when a veteran defaults on a loan guaranteed under the VA's home loan program. At issue was whether a Pennsylvania statute, which prohibited deficiency judgments until a state court valuation of the property was obtained, was inconsistent with regulations governing the calculation of the amount of guarantee the VA pays the lender. The Court held that the state statute was inconsistent with the federal regulation, and stated that it had "no doubt that this regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection of the interests of the [VA] as guarantor and was, to this extent, meant to displace inconsistent state law." Id. at 381.

Defendant interprets this holding as the Court establishing that VA regulations completely preempt state law. But we cannot agree. The Court's opinion in Shimer establishes that the VA regulations control loans guaranteed under the VA's home loan program and that inconsistent state statutes are preempted (i.e. conflict preemption). But the opinion gives no indication that Congress intended the VA regulations to control to such an extent that they occupy the entire field and require a federal forum. Indeed, we cannot even infer that the basis of the federal subject matter jurisdiction in Shimer was federal question jurisdiction. The United States was the plaintiff in the lower court, and subject matter jurisdiction was therefore conferred on the federal courts by virtue of 28 U.S.C. § 1345.

At times in its brief, defendant also appears to define the new fifth area of complete preemption as all federal acquisition law. As support for this definition, defendant relies

primarily on Gartrell Construction v. Aubry, 940 F.2d 437 (9th Cir. 1990). In Gartrell, the Ninth Circuit Court of Appeals determined that contractors are exempt from state licensing requirements for services performed on federal property, and therefore California could not impose civil penalties against a contractor for failure to obtain a California contractor license for work performed on federal property. Id. at 440. But again, defendant appears to confuse conflict preemption with complete preemption. The Gartrell decision unmistakably stands for the rule that federal procurement law trumps state licensing requirements (conflict preemption), but nowhere does the decision indicate that Congress intended to completely displace state law in this area (complete preemption). In addition, a cursory review reveals that the FAR can be construed in tandem with state causes of action. See, e.g., Wrecking Co. v. Saranf Corp., 366 Ill.App.3d 610 (2006) (reviewing arbitrator's award regarding Navy demolition contract); Strayhorn v. Raytheon E-Systems, Inc., 101 S.W.3d 558 (Tex. App.-Austin 2003) (interpreting the FAR to determine if contractor was entitled to state sale for resale sales tax exemption); Abadie v. Organization for Environmental Growth, Inc., 806 A.2d 1225 (D.C. 2002) (reviewing Contract Appeals Board's award of lost profits and other damages to contractor following District of Columbia's termination of contract governed by FAR); General Motors Corp. v. Northrop Corp., 685 N.E.2d 127 (Ind. App. 1997) (applying FAR to specialized contract terms in suit by subcontractor against military contractor for construction of component of stealth military aircraft); Garner v. Universal Machining Co., Inc., 1990 WL 138985 (Tenn. Ct. App. Sept. 26, 1990) (examining FAR in order to determine whether plaintiff was "bona fide employee" entitled to "contingent fee," but ultimately deciding case on grounds unrelated to FAR).

Defendant's remaining argument amounts to nothing more than a declaration that the

FAR and VAAR will prevent any court from enforcing the parties' contract. We note, without deciding, that there is a strong argument for conflict preemption under the federal regulation's prohibition on contingency fees. But as we stated earlier, conflict preemption is a defense and as such does not affect federal subject matter jurisdiction. *See* Vorhees, 272 F.3d at 403. The defendant will have every opportunity to make its conflict preemption argument, but that argument must be made to the appropriate court.

Finally, we note that defendant's argument for federal subject matter jurisdiction rests entirely on complete preemption. Defendant did not argue that this case involves a significant federal question under Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). In Grable, the Court held that a state law claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," can give rise to federal subject matter jurisdiction. *Id.* at 314. We are perplexed by defendant's choice because the Grable argument would appear to be a stronger argument than complete preemption. Nonetheless, we respect the defendant's choice, and because that argument has not been briefed, we refrain from offering a ruling on the merits.

## CONCLUSION

For the reasons stated above, we find that we have no subject matter jurisdiction in this matter. We remand this case to the Circuit Court of Cook County.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 28, 2008.